No. 24-5524

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

## DAVID ERMOLD and DAVID MOORE,

*Plaintiffs-Appellees*,

v.

## KIM DAVIS,
### in her official capacity,

*Defendant-Appellant.*

_____

**On Appeal from the United States District Court for the
Eastern District of Kentucky, No. 0:15-cv-00046**

_____

## BRIEF OF PLAINTIFFS-APPELLEES

Michael J. Gartland
DELCOTTO LAW GROUP PLLC
201 North Upper Street
Lexington, KY 40507
(859) 231-5800
mgartland@dlgfirm.com

Joseph D. Buckles
BUCKLES LAW OFFICE
149 N. Limestone
Lexington, KY 40507
(859) 225-9540
joe@joebuckles.com

William Powell
Kelsi Brown Corkran
*Counsel of Record*
Joseph Mead
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
(202) 661-6629
whp25@georgetown.edu

*Attorneys for Plaintiffs-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellees David Ermold and David Moore state that they are neither subsidiaries nor affiliates of any publicly owned corporation. They further state that there is no publicly owned corporation, not a party to this appeal, that has a financial interest in the outcome.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES................................................................iii

STATEMENT CONCERNING ORAL ARGUMENT ................................1

INTRODUCTION ..............................................................................2

STATEMENT OF JURISDICTION ...........................................................3

STATEMENT OF ISSUES ...................................................................3

STATEMENT...................................................................................4

SUMMARY OF ARGUMENT...............................................................12

STANDARD OF REVIEW ..................................................................14

ARGUMENT...................................................................................16

   I.   The District Court Correctly Upheld The Jury's Verdict Awarding
      Damages.................................................................................16

      A.   Sufficient evidence supports the jury's conclusion that Plaintiffs
           suffered a compensable injury. ..........................................18

      B.   Davis's arguments regarding the amount of damages are both
           forfeited and meritless...................................................27

  II.   Law-Of-The-Case Doctrine Bars Davis's Qualified-Immunity
      Argument. ............................................................................30

      A.   This Court's prior rejections of Davis's qualified-immunity defense
           are the law of this case. ..................................................31

      B.   No "exceptional circumstances" warrant departing from the Court's
           prior rulings in this case.................................................34

      C.   The Court's prior rulings establish Davis's liability under
           Section 1983..............................................................38

 III.  Davis's Accommodation Claim Is Not Part Of This Case. ..................39

CONCLUSION ...............................................................................47

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ..............................................................37

*Advance Sign Grp., LLC v. Optec Displays, Inc.,*
  722 F.3d 778 (6th Cir. 2013) ................................16, 28, 30

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ..............................................................35

*Blueford v. Arkansas,*
  566 U.S. 599 (2012) ..............................................................17

*Brenay v. Schartow,*
  709 F. App'x 331 (6th Cir. 2017)........................................40

*Brennan v. Township of Northville,*
  78 F.3d 1152 (6th Cir. 1996) ..............................................39

*Brent v. Wayne Cnty. Dep't of Hum. Servs.,*
  901 F.3d 656 (6th Cir. 2018) ..............................................15

*Carey v. Piphus,*
  435 U.S. 247 (1978) ..............................................17, 22, 26

*Cash-Darling v. Recycling Equip., Inc.,*
  62 F.4th 969 (6th Cir. 2023) ..............................................15

*Chatman v. Slagle,*
  107 F.3d 380 (6th Cir. 1997) ........................................17, 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ..............................................................47

*CSX Transp., Inc. v. Hensley,*
  556 U.S. 838 (2009) ..............................................................18

*Davis v. Ermold,*
  141 S. Ct. 3 (2020)..................................................................9

*Dimick v. Schiedt,*
  293 U.S. 474 (1935) ..............................................................16

*Employment Div. v. Smith,*
  494 U.S. 872 (1990) ..............................................................47

*Ent. Prods., Inc. v. Shelby County,*
721 F.3d 729 (6th Cir. 2013) ...................................................................34

*Erebia v. Chrysler Plastic Prod. Corp.,*
772 F.2d 1250 (6th Cir. 1985) ...............................................................23

*Ermold v. Davis,*
855 F.3d 715 (6th Cir. 2017) .................................................................8

*Ermold v. Davis,*
936 F.3d 429 (6th Cir. 2019) .........................................................passim

*Ermold v. Davis,*
No. 22-5260, 2022 WL 4546726 (6th Cir. Sept. 29, 2022) .................passim

*Felder v. Casey,*
487 U.S. 131 (1988) ...............................................................................47

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ...............................................................................44

*Heeter v. Bowers,*
99 F.4th 900 (6th Cir. 2024) .......................................................... 31, 39

*Hernandez v. Boles,*
949 F.3d 251 (6th Cir. 2020) ...............................................................15

*Hetzel v. Prince William County,*
523 U.S. 208 (1998) ...............................................................................28

*Howe v. City of Akron,*
801 F.3d 718 (6th Cir. 2015) ................................................15, 32, 34

*Hubbell v. FedEx SmartPost, Inc.,*
933 F.3d 558 (6th Cir. 2019) ...............................................................17

*Jones v. Bottom,*
85 F.4th 805 (6th Cir. 2023) .......................................................... 15, 34

*Kennon v. Gilmer,*
131 U.S. 22 (1889) .................................................................................29

*King v. City of Rockford,*
97 F.4th 379 (6th Cir. 2024) ...............................................................39

*King v. Wells,*
760 F.2d 89 (6th Cir. 1985) ...............................................................23

*Lilley v. BTM Corp.,*
958 F.2d 746 (6th Cir. 1992) ...............................................................30

*Lindke v. Freed*,
   601 U.S. 187 (2024) ...................................................................... 41, 44

*Mallory v. Norfolk S. Ry. Co.*,
   600 U.S. 122 (2023) ...................................................................... 15, 38

*Manhattan Cmty. Access Corp. v. Halleck*,
   587 U.S. 802 (2019) ..............................................................................41

*Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*,
   584 U.S. 617 (2018) ..............................................................................37

*Memphis Cmty. Sch. Dist. v. Stachura*,
   477 U.S. 299 (1986) ..............................................................................17

*Meyers v. City of Cincinnati*,
   14 F.3d 1115 (6th Cir. 1994) ...............................................................23

*Miller v. Davis*,
   123 F. Supp. 3d 924 (E.D. Ky. 2015) ................................................. 5, 7

*Miller v. Davis*,
   667 F. App'x 537 (6th Cir. 2016) ......................................................... 5, 8

*Moody v. Mich. Gaming Control Bd.*,
   871 F.3d 420 (6th Cir. 2017) ............................................................ 31, 34

*Moody v. NetChoice, LLC*,
   144 S. Ct. 2383 (2024) ..........................................................................41

*Moody v. Pepsi-Cola Metro. Bottling Co.*,
   915 F.2d 201 (6th Cir. 1990) ................................................................25

*Moorer v. Baptist Mem'l Health Care Sys.*,
   398 F.3d 469 (6th Cir. 2005) ................................................................26

*NRA v. Vullo*,
   602 U.S. 175 (2024) ..............................................................................44

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) ......................................................................passim

*Occupy Nashville v. Haslam*,
   769 F.3d 434 (6th Cir. 2014) ................................................................35

*Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*,
   783 F.3d 1045 (6th Cir. 2015) ..............................................................40

*Pembaur v. City of Cincinnati*,
   882 F.2d 1101 (6th Cir. 1989) ..............................................................25

*Pennington v. W. Atlas, Inc.,*
202 F.3d 902 (6th Cir. 2000) ....................................................................29

*Radvansky v. City of Olmsted Falls,*
496 F.3d 609 (6th Cir. 2007) ....................................................................15

*Reeves v. Sanderson Plumbing Prod., Inc.,*
530 U.S. 133 (2000) ....................................................................27

*Rodgers v. Fisher Body Div., Gen. Motors Corp.,*
739 F.2d 1102 (6th Cir. 1984) ....................................................................23

*Seales v. City of Detroit,*
959 F.3d 235 (6th Cir. 2020) ....................................................................15

*SEC v. Jarkesy,*
144 S. Ct. 2117 (2024) ....................................................................16

*Sherley v. Sebelius,*
689 F.3d 776 (D.C. Cir. 2012) ....................................................................32

*Smith v. Heath,*
691 F.2d 220 (6th Cir. 1982) ....................................................................29

*Smith v. LexisNexis Screening Sols., Inc.,*
837 F.3d 604 (6th Cir. 2016) ....................................................23, 24, 27

*Story Parchment Co. v. Paterson Parchment Paper Co.,*
282 U.S. 555 (1931) ....................................................................30

*Sykes v. Anderson,*
625 F.3d 294 (6th Cir. 2010) ....................................................................15

*Texaco Inc. v. Hasbrouck,*
496 U.S. 543 (1990) ....................................................................28

*Turic v. Holland Hosp., Inc.,*
85 F.3d 1211 (6th Cir. 1996) ....................................................23, 24, 26

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,*
546 U.S. 394 (2006) ....................................................................29

*Vetters v. Berry,*
575 F.2d 90 (6th Cir. 1978) ....................................................................29

*Waters v. City of Morristown,*
242 F.3d 353 (6th Cir. 2001) ....................................................................46

*Witham v. United States,*
97 F.4th 1027 (6th Cir. 2024) ....................................................................15

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC,*
    774 F.3d 1065 (6th Cir. 2014) ..........................................................16

**Statutes**

2016 Ky. Acts 578 ...........................................................................................7

28 U.S.C. § 1291 ............................................................................................3

28 U.S.C. § 1343(a)(3) ...................................................................................3

28 U.S.C. §§ 1331 ..........................................................................................3

42 U.S.C. § 1983 ..............................................................................3, 39, 44

Ky. Rev. Stat. § 402.100 .................................................................................7

Ky. Rev. Stat. § 402.110 .................................................................................8

**Constitutional Provisions**

U.S. Const. amend. I .....................................................................................41

**Rules**

Fed. R. Civ. P. 59(b) .....................................................................................29

**Treatises**

11 Charles Alan Wright et al., Federal Practice & Procedure:
    Federal Rules of Civil Procedure § 2807 (3d ed. June 2024 Update) ........28

18B Charles Alan Wright et al., Federal Practice and Procedure:
    Jurisdiction and Related Matters § 4478 (4th ed. 2015) .........................32

Restatement (Second) of Torts § 912 cmt. a (Am. L. Inst. 1965) ...................30

Restatement (Second) of Torts § 912 cmt. b (Am. L. Inst. 1965) ...................30

**Other Authorities**

Appellant's Mot. to Dismiss, *Miller v. Davis,*
    Nos. 15-5880 and 15-5978 (6th Cir. June 21, 2016) .............................8

Min. Entry Order, *Miller v. Davis,*
    No. 0:15-cv-00044 (E.D. Ky. Sept. 3, 2015), ECF No. 75.......................7

## STATEMENT CONCERNING ORAL ARGUMENT

Plaintiffs-Appellees David Ermold and David Moore believe the Court can resolve this appeal without oral argument. As explained below, most of the arguments Defendant-Appellant Kim Davis raises in her opening brief are ones the Court has already considered and rejected in her prior appeals. Once the issues that have already been decided are stripped away, the remaining questions are straightforward. If the Court decides to hold oral argument, however, Plaintiffs would like to participate.

## INTRODUCTION

While exercising her official authority as the Clerk of Rowan County, Kentucky, Defendant Kim Davis repeatedly refused to issue marriage licenses to same-sex couples, including Plaintiffs David Ermold and David Moore. She did so in open defiance of the Supreme Court's decision in *Obergefell v. Hodges*, 576 U.S. 644 (2015), which recognized same-sex couples' "fundamental right to marry," *id.* at 675. The district court held Davis liable for that constitutional violation, and this Court has already rejected Davis's arguments to the contrary twice before. *Ermold v. Davis*, No. 22-5260, 2022 WL 4546726 (6th Cir. Sept. 29, 2022) (*Davis 2022*); *Ermold v. Davis*, 936 F.3d 429 (6th Cir. 2019) (*Davis 2019*). All that has happened since then is that a jury awarded modest compensatory damages.

Davis now appeals for the third time, arguing yet again that she is not liable for her unconstitutional actions. Her arguments are again meritless. The jury acted reasonably in awarding compensatory damages based on extensive evidence of the emotional injury that Davis inflicted on Plaintiffs. This Court has already rejected her qualified-immunity argument twice before, and the law-of-the-case doctrine bars her attempt to raise that defense again. As she concedes, this Court lacks authority to consider her argument for overturning *Obergefell*. And Davis's religious accommodation claim is not part of this lawsuit. The Court should therefore reject Davis's final effort to avoid responsibility for violating Plaintiffs' constitutional rights.

## STATEMENT OF JURISDICTION

Plaintiffs filed this civil-rights action under 42 U.S.C. § 1983. Compl., R. 1, Page ID ##3-6; Am. Compl., R. 27, Page ID ##122-127. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Following a jury verdict awarding damages, the district court entered final judgment in favor of Plaintiffs on December 28, 2023. J., R. 166, Page ID #2590. Davis filed a renewed motion for judgment as a matter of law on January 25, 2024. Davis's Renewed Mot. for J. as a Matter of Law, R. 172, Page ID ##3089-3106. The filing of that motion tolled the deadline to appeal from the district court's final judgment. *See* Fed. R. App. P. 4(a)(4)(A)(i). The district court denied Davis's renewed motion for judgment as a matter of law on April 23, 2024. Mem. Op. and Order, R.175, Page ID ##3125-3130. Davis then filed a timely notice of appeal on May 21, 2024. Notice of Appeal, R.176, Page ID ##3131-3132. This Court has jurisdiction over Davis's appeal from the district court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      Whether the district court correctly declined to set aside the jury's verdict awarding damages.

2.      Whether the district court correctly concluded that Davis is not entitled to qualified immunity, in light of this Court's two prior decisions holding that she is not immune.

3.     Whether the district court correctly held that neither the First Amendment nor the Kentucky Religious Freedom Restoration Act permits government officials, when acting within the scope of their official duties, to violate other people's constitutional rights.

## STATEMENT

On June 26, 2015, the Supreme Court of the United States held that same-sex couples enjoy the "the fundamental right to marry," which is "inherent in the liberty of the person," under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Obergefell*, 576 U.S. at 675. The decision contained no exceptions. The Court "emphasized" the rights of "those who adhere to religious doctrines" to "continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned." *Id.* at 679. But the Court made clear that same-sex couples who wish to marry "may not be deprived of that right and that liberty" by the government. *Id.* at 675. *Obergefell* thus invalidated Kentucky's laws prohibiting same-sex marriage, along with similar laws in many other states. *See id.* at 652-54.

At the time of the Supreme Court's decision in *Obergefell*, Defendant Kim Davis was serving as the Clerk of Rowan County, Kentucky. In that role, she was responsible for issuing marriage licenses on behalf of the State. Within hours of the Supreme Court's issuance of its decision in *Obergefell*, then-Governor of Kentucky Steve Beshear sent a letter to all of the State's county clerks, including Davis. Letter from Gov. Beshear to Ky. Cnty. Clerks, R. 27-1, Page ID #128. In the letter, Governor Beshear

alerted clerks to the Supreme Court's decision and reminded them that, "[a]s elected officials, each of us has taken an oath to uphold the Constitution of the United States and the Constitution of Kentucky." *Id.* The Governor explained that *Obergefell* "makes plain that the Constitution requires that Kentucky—and all states—must license and recognize the marriages of same-sex couples." *Id.* The Supreme Court's decision thus required clerks to begin issuing marriage licenses to same-sex couples, as well as recognizing same-sex marriages performed in other states, "[e]ffective today." *Id.* Governor Beshear told clerks that, although "[n]either your oath nor the Supreme Court dictates what you must believe," "as elected officials, they do prescribe how we must act." *Id.*

Davis received, read, and understood that letter. Davis Dep. Tr., R. 88-2, Page ID ##733-734. The Rowan County Attorney likewise advised her that she was legally required to issue marriage licenses to same-sex couples. *Id.* at Page ID ##742-743. She also read the *Obergefell* opinion and understood what it said. *Id.* at Page ID #741.

But Davis nevertheless defied the Supreme Court's command, as well as the guidance from the Governor and County Attorney. Within a day of the *Obergefell* decision, Davis announced that her office would no longer issue marriage licenses to anyone. Answer, R. 96-1, Page ID #1865; *Davis 2019*, 936 F.3d at 432; *Miller v. Davis*, 123 F. Supp. 3d 924, 929 (E.D. Ky. 2015), *vacated*, 667 F. App'x 537 (6th Cir. 2016). Davis instituted this policy based on her religious belief that marriage must be between

one man and one woman. *See* Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID #1865.

Plaintiffs are a same-sex couple who at the time of the *Obergefell* decision had been in a committed relationship for 17 years. *See* Am. Compl. R. 27, Page ID #120; Answer, R. 96-1, Page ID #1864. They have now been together for more than 25 years. On three separate occasions in the weeks following the *Obergefell* decision, Plaintiffs went to the Rowan County Clerk's Office to apply for a marriage license. Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID ##1865-1866. All three times, Davis and her staff rejected their request. Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID ##1865-1866.

Plaintiffs took their first trip to the clerk's office on July 6, 2015, ten days after the release of *Obergefell*. Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID #1865. Davis personally denied their application, explaining that she could not issue a marriage license to a same-sex couple based on her understanding of the heterosexual origins of man, as set forth in the Old Testament. Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID #1865. "Davis told the *Ermold* Plaintiffs that she could not give them a marriage license 'under God's authority.'" Mem. Op. and Order, R. 108, Page ID #1952 (quoting Davis Dep. Tr., R. 88-2, Page ID #739).

Shortly after Davis's first denial of their application for a marriage license, Plaintiffs filed this lawsuit against Davis, in both her individual and official capacities. *See* Compl., R. 1, Page ID ##1-6. They sought money damages based on Davis's

violation of their constitutional right to marry. *Id.* at Page ID ##3–6. On August 12, 2015, in a separate action, the district court entered a preliminary injunction requiring Davis to issue marriage licenses. *See Miller*, 123 F. Supp. 3d at 944. Following the issuance of that preliminary injunction, Plaintiffs again tried to get a marriage license from Davis on August 13, 2015, and September 1, 2015. But Davis and her staff denied them both times, in accordance with Davis's "instituted policy." Mem. Op. and Order, R. 108, Page ID #1952; *see* Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID #1866. On September 3, 2015, the district court in the *Miller* case held Davis in contempt and ordered her incarcerated for violating the preliminary injunction. *See* Min. Entry Order, *Miller v. Davis*, No. 0:15-cv-00044 (E.D. Ky. Sept. 3, 2015), ECF No. 75. The following day, Plaintiffs were finally able to obtain a marriage license from one of Davis's deputies while Davis was in jail. Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID #1866.

On April 13, 2016, then-Governor of Kentucky Matt Bevin signed into law Kentucky Senate Bill 216 ("S.B. 216"), which was intended to resolve the controversy related to Davis's refusal to issue marriage licenses. *See* 2016 Ky. Acts 578. S.B. 216 removed county clerks' names and signatures from the State's marriage license forms, but it retained clerks' central role in issuing and recording marriage licenses. For instance, county clerks in Kentucky still must "make available to the public the form . . . for the issuance of a marriage license," Ky. Rev. Stat. § 402.100, and personally "see

to it" that applicants fill in every required field "before delivering" the completed form to them, *id.* § 402.110.

Although Davis had previously objected to issuing marriage licenses to same-sex couples at all, she decided following the enactment of S.B. 216 that she would be willing to issue the licenses without her name on them. She therefore moved to dismiss as moot her own appeals of the district court's orders in *Miller* granting a preliminary injunction and holding her in contempt. *See* Appellant's Mot. to Dismiss, *Miller v. Davis*, Nos. 15-5880 and 15-5978 (6th Cir. June 21, 2016). With the agreement of the *Miller* plaintiffs, this Court dismissed Davis's appeals in that case as moot. *Miller v. Davis*, 667 F. App'x 537, 538 (6th Cir. 2016). Misapprehending the scope of that decision, the district court then dismissed as moot not only the *Miller* litigation, but this case as well. Order, R. 19, Page ID ##95-97. Plaintiffs appealed, and this Court reversed. *See Ermold v. Davis*, 855 F.3d 715 (6th Cir. 2017) (*Davis 2017*). The Court held that because Plaintiffs sought damages, their claims were not moot. *Id.* at 720. In reaching that conclusion, the Court explained that "the record does not support" Davis's argument that Plaintiffs' "damages claims are insubstantial or otherwise foreclosed." *Id.*

On remand from *Davis 2017*, Plaintiffs amended their complaint, and Davis moved to dismiss on grounds of sovereign and qualified immunity. Am. Compl., R. 27, Page ID ##119-126; Davis's Mot. to Dismiss, R. 29, Page ID ##139-140. The district court granted Davis's motion in part and denied it in part. Mem. Op. and Order, R. 49, Page ID ##294-314. The court held that Davis was entitled to sovereign immunity in

her official capacity but that she was not entitled to qualified immunity in her individual capacity. Davis immediately appealed the denial of qualified immunity. Plaintiffs cross-appealed the grant of sovereign immunity, after the district court entered partial final judgment with respect to that issue.

This Court affirmed both the grant of sovereign immunity and the denial of qualified immunity. *Davis 2019*, 936 F.3d at 438. With respect to qualified immunity, the Court held that Plaintiffs had adequately alleged a violation of their right to marry, which *Obergefell* clearly established. The Court explained that *Obergefell* "both recognized the right to same-sex marriage and defined its contours." *Id.* at 436. The Supreme Court's decision was "as sweeping as it was unequivocal" and "made no mention of a limit on that right, of an exception to it, or of a multi-factor test for determining when an official violates it." *Id.* "For a *reasonable* official, *Obergefell* left no uncertainty." *Id.* Davis's petitions for rehearing en banc and for certiorari were both denied. *See Davis v. Ermold*, 141 S. Ct. 3 (2020).

On remand from *Davis 2019*, Plaintiffs moved for summary judgment on liability. Pls.' Mot. for Summ. J., R. 88, Page ID ##713-714. Davis filed a cross-motion for summary judgment, again raising her qualified-immunity defense. Davis's Mot. for Summ. J., R. 93, Page ID ##1699-1776. The district court granted Plaintiffs' motion for summary judgment and denied Davis's motion for summary judgment, rejecting her "recycled" arguments about qualified immunity. Mem. Op. and Order, R. 108, Page ID ##1948-1969.

This Court again affirmed the denial of qualified immunity. *Davis 2022*, 2022 WL 4546726, at *2. As the Court explained, Plaintiffs' allegations against Davis were "proven in discovery." *Id.* Specifically, Davis was the official responsible for issuing marriage licenses; Plaintiffs qualified for a license; and Davis refused to license them, despite her knowledge that the Fourteenth Amendment guaranteed them the right to marry. *Id.* In light of that evidence, "plaintiffs have not only 'alleged' but also now 'shown' that Davis violated their constitutional right to marry." *Id.*

On remand from *Davis 2022*, the district court held a trial focused solely on the issue of damages. Both Plaintiffs testified about the profound emotional distress that they suffered because of Davis's denial of their right to marry. Plaintiff Moore testified that when Davis denied Plaintiffs a marriage license on July 6, 2015, he "got really emotional, Dave [Ermold] got really emotional, and [they] walked out." Trial Tr., R. 169, Page ID #2786. In that moment, Moore was "mad" and "upset," and testifying about the experience years later brought those feelings back to the surface. *Id.*; *see also id.* at Page ID ##2787-2788 (Moore testifying that that he was "really upset" and "didn't know what [they] were going to do" after Davis's July 2015 rejection).

That initial denial was especially painful for Plaintiffs because of disparaging remarks that Davis made to them personally. After Davis said she would not give Plaintiffs a marriage license, Moore told Davis that she was rejecting a loving gay couple even though she had likely given marriage licenses in the past to rapists, murderers, and pedophiles. *Id.* at Page ID ##2785-2786. Davis responded by saying that giving

licenses to those people "was fine because they were straight." *Id.* at Page ID #2786. That comment made Moore "feel like [he was] less than a person, like [he was] just subhuman." *Id.* at Page ID #2786. Ermold testified that Davis "insinuat[ing] . . . that [they] were less than pedophiles, murderers, and rapists" is something that he "can never forget" for the "rest of [his] life." *Id.* at Page ID #2818.

Davis's further denials on August 13, 2015, and September 1, 2015, added to Plaintiffs' humiliation. Moore testified that with each successive denial, he "was getting more frustrated and more frustrated" and "couldn't believe that [they] were still doing this." *Id.* at Page ID #2790. Ermold likewise testified that "[i]t was just a devastating experience." *Id.* at Page ID #2817. He added: "She humiliated me in front of my husband, she humiliated him in front of me, and she humiliated us in front of that entire building." *Id.* at Page ID ##2818-2819.

Plaintiffs testified that the harm from Davis's denials lasted long after the confrontations in her office, affecting their emotional wellbeing and marriage to this day. *E.g.*, *id.* at Page ID #2797 (Moore testifying "it's distorted []our whole life forever"); *id.* at Page ID #2818 (Ermold testifying "I can never forget it for the rest of my life"); *id.* at Page ID #2829 (Ermold describing it as "the second most difficult thing I've ever been through in my entire life"). Plaintiffs testified about many specific ways in which Davis's actions continue to haunt their lives, including causing tension in their marriage, *id.* at Page ID ##2791, 2821; ruining their memories from their wedding, *id.* at Page ID ##2792, 2794, 2816; interfering with Ermold's performance at work, *id.* at

Page ID #2818; triggering Ermold's PTSD on "a daily basis almost," *id.* at Page ID #2854; and undermining their sense of security in their home, *id.* at Page ID #2819.

Plaintiffs also called Davis to testify as part of their case-in-chief, and she confirmed their testimony. Davis witnessed firsthand how her actions caused anguish to Plaintiffs, and she testified about their reactions as follows:

> Q. And it's a fact that as a result of that interaction with them, you knew that [Ermold] was upset?
>
> [Davis:]. Well, yeah. He was yelling and screaming at me.
>
> Q. Okay. And do you think that he was doing that because he was not upset, genuinely upset?
>
> [Davis:] . . . . I could gather that he was highly perturbed because I was not going to issue the license.

*Id.* at Page ID #2898.

Based on that testimony, the jury awarded $50,000 in compensatory damages to each Plaintiff. Special Verdict Form, R. 152, Page ID #2178. The district court entered final judgment in Plaintiffs' favor, J., R. 166, Page ID #2590, and denied Davis's renewed motion for judgment as a matter of law, Mem. Op. and Order, R. 175, Page ID ##3125-3130. Davis then filed this final appeal.

## SUMMARY OF ARGUMENT

In *Obergefell*, the Supreme Court held that same-sex couples enjoy "the fundamental right to marry" under the Fourteenth Amendment and "may not be deprived of that right" by the government. 576 U.S. at 675. In accordance with

*Obergefell*'s holding, dozens of states across the country that had previously banned same-sex marriage, including Kentucky, began to license such unions. But "the message apparently didn't get through" to Defendant Kim Davis. *Davis 2019*, 936 F.3d at 436. Exercising her official authority as the Clerk of Rowan County, Kentucky, Davis did exactly what the Supreme Court said she could not: She "denied" Plaintiffs their "fundamental right to marry." *Id.* Under Section 1983, she is liable to Plaintiffs for violating their clearly established constitutional rights. Over the course of this long-running case, both the district court and this Court have repeatedly recognized the violation of Plaintiffs' rights. And the jury awarded damages as compensation for the emotional harm that Davis's constitutional violation inflicted on Plaintiffs.

Having lost on each of three prior trips to this Court, Davis now appeals once more, arguing yet again that she should not be held accountable for her unconstitutional conduct. Her arguments once again lack merit. The only new development since *Davis 2022* is the trial on damages. As Davis concedes, compensatory emotional-distress damages are available under Section 1983. The jury here acted reasonably in awarding damages based on extensive testimony from both Plaintiffs documenting the profound pain they experienced when Davis denied their right to marry and belittled and demeaned their relationship. Indeed, Davis herself testified that she observed the distress she caused Plaintiffs, confirming their testimony.

This Court has already rejected Davis's qualified-immunity argument twice before, and the law-of-the-case doctrine bars her attempt to raise that defense again.

She has identified no extraordinary circumstances that would merit departing from the Court's prior decisions. To the contrary, nearly all of her arguments for why she did not violate clearly established law are ones this Court has already rejected. Davis's only new argument is that *Obergefell* should be overruled. But even Davis concedes this Court lacks authority to consider that request.

Finally, Davis's religious accommodation claim has no place in this dispute between her and Plaintiffs, who are private citizens. It is the people who have constitutional rights against the government, not the other way around. Of course, Davis is entitled to her religious belief that marriage must be between one man and one woman. But she was not entitled to turn her personal religious belief into the official policy of the Rowan County Clerk's Office, when that policy violated the constitutional rights of the County's people. To the extent she had a claim for an accommodation under the First Amendment or the Kentucky Religious Freedom Restoration Act, she needed to assert that claim against the Commonwealth of Kentucky, rather than taking matters into her own hands by acting on behalf of the State to deny Plaintiffs their right to marry.

The Court should reject Davis's latest effort to avoid responsibility for violating Plaintiffs' constitutional rights. It is time for this case to come to a close.

## STANDARD OF REVIEW

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "must overcome the substantial deference owed a jury verdict." *Radvansky v. City*

*of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007).  A court may grant the motion "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *accord Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020).  On appeal, this Court "review[s] a district court's denial of a Rule 50(b) motion de novo, applying the same deferential standard as the district court." *Radvansky*, 496 F.3d at 614; *see Seales v. City of Detroit*, 959 F.3d 235, 240 (6th Cir. 2020).

Ordinarily, the Court would review both the district court's denial of qualified immunity to Davis and its grant of summary judgment to Plaintiffs de novo.  *See Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 683 (6th Cir. 2018) (qualified immunity); *Cash-Darling v. Recycling Equip., Inc.*, 62 F.4th 969, 975 (6th Cir. 2023) (summary judgment).  Here, however, Davis's efforts to relitigate this Court's prior decisions on qualified immunity in *Davis 2019* and *Davis 2022* are barred by the law-of-the-case doctrine.  *See Howe v. City of Akron*, 801 F.3d 718, 739-40 (6th Cir. 2015); *Jones v. Bottom*, 85 F.4th 805, 811 (6th Cir. 2023).  And as even Davis acknowledges (at 50 n.2), her argument for overruling *Obergefell* is beyond the power of this Court to adjudicate.  *See Witham v. United States*, 97 F.4th 1027, 1035 (6th Cir. 2024) ("As an intermediary appellate court, we must follow Supreme Court decisions until directed otherwise."); *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).

# ARGUMENT

## I. The District Court Correctly Upheld The Jury's Verdict Awarding Damages.

Davis first contends that the evidence presented at trial was insufficient to support the jury's award of damages. In asking this Court to second-guess the findings of the jury, Davis faces a difficult task. When reviewing the denial of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), the Court may not "weigh the evidence, question the credibility of the witnesses, or substitute [the Court's] judgment for that of the trier of fact." *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1072 (6th Cir. 2014). Davis's motion may be granted only if, in viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, no reasonable mind could agree with the jury's verdict. *Id.* This demanding standard reflects the jury's vital role in our constitutional framework and system of justice: "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

The Court's "review of a jury's damage award," in particular, is "extremely deferential." *Advance Sign Grp., LLC v. Optec Displays, Inc.*, 722 F.3d 778, 787 (6th Cir. 2013). And contrary to Davis's suggestion, there is nothing unusual or suspect about

an award of emotional-distress damages in a civil-rights action brought under Section 1983. Simply put, "mental and emotional distress constitute compensable injury in § 1983 cases." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)); *see also id.* (explaining that "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering" (internal quotation marks and alterations omitted)). Indeed, Davis concedes that "[e]motional distress damages are permissible in Section 1983 actions." Davis Br. 18. "[M]ental and emotional distress" are "a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." *Carey*, 435 U.S. at 263-64. Such distress need not be "severe," "outrageous," or "extreme" to constitute a compensable injury under Section 1983. *Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997). Rather, so long as "*any* harm is shown," damages may be awarded. *Id.* at 385 (emphasis added).

Deference to the jury is especially warranted here because Davis has failed to preserve any challenge to the jury instructions, and the jury is "presumed to follow" its instructions. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 574 (6th Cir. 2019) (quoting *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012)). The district court instructed the jury that "a plaintiff who alleges the violation of a constitutional right is not entitled to compensatory damages unless he can prove actual injury caused by the violation." Jury Instrs., R. 153, Page ID #2194. The instructions emphasized that it was "imperative"

for the jury to "award only those damages, if any, that have been proved by the Plaintiffs by a preponderance of the evidence." *Id.* at Page ID #2195. Neither "abstract injuries to constitutional rights" nor "speculation or sympathy" would suffice. *Id.* The jury is presumed to have followed those instructions requiring proof of actual injury. With respect to jury instructions about damages, in particular, the Supreme Court has explained that "[t]he jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) (per curiam).

### A. Sufficient evidence supports the jury's conclusion that Plaintiffs suffered a compensable injury.

At trial, Plaintiffs presented more than enough evidence for the jury to conclude that Davis caused them a compensable injury. The jury heard extensive testimony from both Plaintiffs about the profound emotional pain that Davis inflicted by refusing to grant them a marriage license, in open defiance of the Supreme Court's decision in *Obergefell*. Plaintiffs explained that their distress lasted long after Davis's denials, haunting their marriage and lives. And Davis herself testified that she observed Plaintiffs in a state of emotional distress, corroborating Plaintiffs' testimony. As the district court noted, "[t]he detailed testimony establishes ongoing stress, anguish[,] humiliation[,] and tension." Mem. Op. and Order, R. 175, Page ID #3129. The jury was entitled to credit that testimony and to award damages accordingly. *See Chatman*, 107 F.3d at 384-85 (explaining that under Section 1983, "damages for emotional distress

may be awarded upon a showing of intimidation, marital problems, weight loss, loss of sleep, shock, or humiliation" (internal quotation marks and alterations omitted)).

Both Plaintiffs testified about their profound anger, hurt, and frustration in the moments when Davis told them—multiple times—that she would not grant them the marriage license to which they were entitled under the Fourteenth Amendment. With respect to the first time that Davis denied Plaintiffs a marriage license, on July 6, 2015, Plaintiff Moore testified: "I got really emotional, Dave [Ermold] got really emotional, and we walked out." Trial Tr., R. 169, Page ID #2786. In that moment, Moore was "mad" and "upset," and testifying about the experience years later brought all of those feelings back. *Id.*

Davis's initial refusal to issue a license was particularly hurtful to both Plaintiffs because, rather than just turning them away, she personally denigrated their relationship. As Moore testified, Davis told Plaintiffs that giving marriage licenses to rapists, murderers, and pedophiles "was fine because they were straight." *Id.* at Page ID #2786; *see also id.* at Page ID #2818 (Ermold testifying that Davis "insinuated . . . that [Ermold and Moore] were less than pedophiles, murderers, and rapists"). That comment made Moore "feel like [he was] less than a person, like [he was] just subhuman." *Id.* at Page ID #2786; *see also id.* at Page ID #2812 (Moore testifying that Davis's statement made him feel like a "second-class citizen," and "just a dog"). Davis's statement has caused Ermold lasting pain: "I can never forget it for the rest of my life that she referred to my husband as less than a pedophile." *Id.* at Page ID #2818.

19

Davis and her staff again refused to give Plaintiffs a marriage license on August 13, 2015, and on September 1, 2015. Moore testified that with each successive denial, he "was getting more frustrated and more frustrated" and "couldn't believe that [they] were still doing this." *Id.* at Page ID #2790. Ermold likewise testified that "[i]t was just a devastating experience." *Id.* at Page ID #2817. He added: "She humiliated me in front of my husband, she humiliated him in front of me, and she humiliated us in front of that entire building." *Id.* at Page ID ##2818-2819. As the district court correctly noted—and as the jury was entitled to conclude—that humiliation went well beyond "simply hurt feelings." Mem. Op. and Order, R. 175, Page ID #3129.

The context of this case amplifies the pain that Davis inflicted. Plaintiffs did not come to Davis's office for a fishing license or to renew their car registration. They were there to obtain a license to marry, a ritual that is "essential to our most profound hopes and aspirations." *Obergefell*, 576 U.S. at 657. Marriage "allows two people to find a life that could not be found alone, for a marriage becomes greater than just the two persons." *Id.* Plaintiffs should have been able to walk into Davis's office and celebrate the receipt of their marriage license, a key step on the happy journey they were undertaking. But Davis transformed what could have been a day of celebration into one of trauma and anguish. As Ermold testified, he was initially "really, really, really excited" that *Obergefell* gave him the opportunity to marry the love of his life, but Davis "took that away." Trial Tr., R. 169, Page ID #2814.

Davis's actions have cast a shadow over Plaintiffs' marriage. Both Plaintiffs testified that Davis caused stress and tension in their relationship. *Id.* at Page ID ##2791-2792 (Moore); *id.* at Page ID #2821 (Ermold). Davis also permanently tarnished Plaintiffs' memories from their wedding. Plaintiffs cannot show their wedding photos to friends, or look back on the big day, without Davis coming up in the conversation. *Id.* at Page ID #2794 (Moore testifying that they "just see her face whenever [they] see [their] wedding pictures now"); *id.* at Page ID #2816 (Ermold testifying that Davis "tainted [their] wedding"). As Moore explained, instead of the happy wedding memories that he and Ermold should have, "it becomes a distorted nightmare situation for everybody." *Id.* at Page ID #2792. He continued: "It shouldn't have been that way because that's the memory forever of your marriage and going and getting your license." *Id.*

The hurt Davis caused Plaintiffs lasts to this day. Moore testified that the couple continues to "talk about it all the time," and Ermold often "brings it up" and is still "upset right now." *Id.* at Page ID #2794. Ermold testified that he relives the hurt "over and over and over again," to the extent that it feels "constant" and has "interrupted" his work. *Id.* at Page ID #2818; *see also id.* (Ermold testifying "[i]t's unbelievable the effect that she has had on me."). To Ermold, Davis's impact on his life is "not settled even now" and has "amplified [his] PTSD" on "a daily basis almost." *Id.* at Page ID ##2853-2854. As Moore put it, "it's distorted [his] whole life forever," and he is "just

going to have those memories forever [and] have to think about that forever." *Id.* at Page ID #2797.

The experience has even disrupted Plaintiffs' sense of security, placing them in fear of violence. Moore testified that the threatening atmosphere that Davis's refusal created—with armed extremists stationed outside her office shouting slurs, *id.* at Page ID ##2789-2791—made him second-guess whether to assert his right to marry at all. He worried: "[S]hould I even go in and do this? Should I even—because you see people with guns, and you're thinking, are we going to get shot? Is it safe to go in?" *Id.* at Page ID #2791. Ermold testified that he now lives in a "[p]erpetual state of fear," such that Plaintiffs may "have to sell [their] home and leave" before he can "feel safe." *Id.* at Page ID #2819; *see also id.* at Page ID #2824 (Ermold testifying that he has "a lot of stress and anxiety because of what has happened").

That extensive testimony detailing Plaintiffs' injuries is more than sufficient to support the jury's verdict awarding damages. The trial record "show[ed] the nature and circumstances of the wrong and its effect on the plaintiff." *Carey*, 435 U.S. at 264. Davis's various efforts on appeal to minimize the force of Plaintiffs' testimony are unavailing. The jury acted reasonably in compensating Plaintiffs for their emotional injuries.

Davis contends that there was no "competent evidence" or "actual proof" of emotional injury before the jury. Davis Br. 15-16; *see also id.* at 23 (complaining about the "utter lack of proof"). But of course, testimony is evidence that a jury may consider.

22

"A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden" to prove the defendant caused "emotional distress." *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) (citing *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994)); *see also Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (upholding a jury's award of emotional-distress damages based solely on testimony from the plaintiff and his spouse); *King v. Wells*, 760 F.2d 89, 94 (6th Cir. 1985) (upholding the trial court's finding that a prisoner suffered emotional distress based solely on his testimony). Here the jury heard extensive testimony regarding Plaintiffs' injuries.

Davis's contrary position is based on a misunderstanding of this Court's precedents. *See* Davis Br. at 19-20. The cases on which Davis relies stand only for the unremarkable proposition that a plaintiff may not recover emotional-distress damages based solely on a brief, conclusory statement that he was upset. For example, in *Rodgers v. Fisher Body Division, General Motors Corp.*, this Court held that a person who simply said that he was "humiliated" by an experience for which the defendant was only indirectly responsible had failed to carry his burden. 739 F.2d 1102, 1107 (6th Cir. 1984). Similarly, in *Erebia v. Chrysler Plastic Products Corp.*, the "plaintiff's only proof of emotional harm consisted of his statements that he was 'highly upset'" and "that 'you can only take so much.'" 772 F.2d 1250, 1259 (6th Cir. 1985). Such brief testimony, standing alone, was insufficient to substantiate emotional-distress damages.

Here, by contrast, Plaintiffs did not simply assert at trial, in a brief and conclusory fashion, that they were upset. Instead, they provided specific details about the depth and duration of their distress. They testified that the harm Davis caused them was not a fleeting moment of discomfort but rather a permanent disruption to their marriage and emotional wellbeing that persists even today. *E.g.*, Trial Tr., R. 169, Page ID #2797 (Moore testifying that "it's distorted []our whole life forever"); *id.* at Page ID #2818 (Ermold testifying "I can never forget it for the rest of my life"); *id.* at Page ID #2829 (Ermold describing it as "the second most difficult thing I've ever been through in my entire life"). They also testified about many specific manifestations of this trauma in their lives, including causing tension in their marriage, *id.* at Page ID ##2791, 2821; ruining their memories from their wedding, *id.* at Page ID ##2792, 2794, 2816; interfering with Ermold's performance at work, *id.* at Page ID #2818; triggering Ermold's PTSD on "a daily basis almost," *id.* at Page ID #2854; and shaking their sense of security in their own home, *id.* at Page ID #2819.

This case is more analogous to the Court's decisions in *Smith* and *Turic* than to the cases on which Defendant relies. In *Smith*, this Court held that "extensive" testimony from the plaintiff and his spouse describing the plaintiff's "shame, anger, and stress" was sufficient to support an award of emotional-distress damages. 837 F.3d at 611. Likewise, in *Turic*, this Court held that the plaintiff's testimony regarding specific manifestations, such as nightmares and "excessive nervousness," was enough to justify an award of emotional-distress damages. 85 F.3d at 1215; *see also id.* (distinguishing

*Rodgers* as a case where "the plaintiff failed to testify that he suffered any manifestations of his alleged mental distress"); *Pembaur v. City of Cincinnati*, 882 F.2d 1101, 1105 (6th Cir. 1989) (concluding that a trial judge erred by finding that a plaintiff suffered no mental distress when the plaintiff submitted evidence of "stress-related symptoms"). Davis's argument that something more is needed here misunderstands the law and ignores the evidence that was before the jury.

Davis suggests it is "[n]otabl[e]" that Plaintiffs "did not even present testimony to the jury of one another's emotional distress." Davis Br. 24. According to Davis, "[i]n not one instance of the trial testimony did Mr. Ermold testify about his observations of Mr. Moore's claimed emotional distress, nor did Mr. Moore ever testify about his observations of Mr. Ermold's claimed emotional distress." *Id.* This claim is demonstrably false. As just one example, Moore testified that Ermold "got really emotional" when Davis refused to issue them a license. Trial Tr., R. 169, Page ID #2786. Moore also testified about the ongoing effect of Davis's actions on Ermold's wellbeing. *Id.* at Page ID #2794 (Moore testifying that "Dave [Ermold] brings it up" often and "[h]e's upset right now"). Ermold, likewise, testified about the effect of Davis's actions on Moore: "She humiliated me in front of my husband, she humiliated him in front of me, and she humiliated us in front of that entire building." *Id.* at Page ID ##2818-2819. Although confirming testimony from a spouse is not required, its presence reinforces the sufficiency of the evidence. *See Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 210 (6th Cir. 1990) (holding that a plaintiff's testimony, coupled with

testimony from his spouse, was enough to defeat a motion for judgment as a matter of law on emotional-distress damages under Michigan law, which requires "specific and definite evidence" of anguish, a more demanding standard than this Court applies under Section 1983 (internal quotation marks omitted)).

Davis also complains that Plaintiffs did not put on "testimony of doctors [or] mental health professionals." Davis Br. 24. But it is well-established that "emotional injury may be proved without medical support." *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 485 (6th Cir. 2005) (citing *Turic*, 85 F.3d at 1215). Indeed, Davis conceded at trial that no expert testimony was necessary. Trial Tr., R. 169, Page ID #2907. She has thus waived any objection to the lack of expert testimony now.

Even if more were needed, more was provided in the form of Davis's own testimony. She saw how her actions upset Plaintiffs and testified that she "could gather that [Ermold] was highly perturbed because I was not going to issue the license." *Id.* at Page ID #2898. The jury was entitled to credit Davis's own testimony that her acts caused Plaintiffs distress. *See Turic*, 85 F.3d at 1215 (holding that a witness's testimony that a plaintiff "was extremely upset and frightened after being discharged, and that she ran from the meeting in tears" supported an award of emotional-distress damages). As the Supreme Court noted in *Carey*, "genuine injury in this respect [of emotional distress] may be evidenced by one's conduct and observed by others." 435 U.S. at 264 n.20; *cf.* Davis Br. 24 (indicating that Plaintiffs could support their testimony with the testimony of "others who observed their alleged distress").

Reasonable jurors could consider all of the testimony they heard, in light of their own experiences and common sense, and conclude that actions tainting a marriage celebration would naturally cause mental distress. *See Smith*, 837 F.3d at 611 (holding that losing a job opportunity is an experience "with which reasonable jurors could identify and infer that a reasonable person in the same situation would suffer emotional distress"). And the jurors could assess Plaintiffs' demeanor on the stand and judge for themselves how upset Plaintiffs were as they testified. In reviewing the jury's verdict, this Court "may not" second-guess the jury by "mak[ing] credibility determinations or weigh[ing] the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). In light of the extensive testimony detailing the harm Davis caused Plaintiffs, the jurors were entitled to conclude that Plaintiffs were, in fact, injured.

## B. Davis's arguments regarding the amount of damages are both forfeited and meritless.

Apart from contending that Plaintiffs failed to prove any damages, Davis also makes several references to the amount of damages. In particular, she emphasizes testimony from Plaintiffs indicating that they deferred to the jury on assigning a precise dollar figure to their emotional distress. *See* Davis Br. 20-25. But Davis never explains how the quantification of damages fits into her arguments on appeal. And regardless, she forfeited any challenge to the amount of damages by not raising it below.

In the trial court, Davis contested only the existence of Plaintiffs' emotional-distress injury. Following trial, Davis filed a renewed motion for judgment as a matter

of law under Federal Rule of Civil Procedure 50, arguing that judgment should be entered in her favor because Plaintiffs had failed to prove *any* damages. *See* Davis's Renewed Mot. for J. as a Matter of Law, R. 172, Page ID #3105 (arguing that the evidence at trial was "insufficient to warrant an award of emotional distress damages" at all). To challenge the size of the verdict, Davis would have needed to file a separate motion seeking a new trial under Rule 59. *See, e.g.*, *Advance Sign Grp.*, 722 F.3d at 787-88 (assessing a challenge to the amount of damages awarded under Rule 59); *see also* 11 Charles Alan Wright et al., Federal Practice & Procedure: Federal Rules of Civil Procedure § 2807 (3d ed. June 2024 Update) ("A motion under Rule 59 is an appropriate means to challenge the size of the verdict."); *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 573 (1990) ("A possible flaw in the jury's calculation of the amount of damages would not be an appropriate basis for granting Texaco's motion for a judgment notwithstanding the verdict."). Because she failed to move for a new trial, Davis cannot contest the extent of the damages, as opposed to the existence of the injury.

The distinction between a motion for judgment as a matter of law under Rule 50 and a motion for a new trial under Rule 59 is no empty formalism. The Supreme Court has held that a court violates the Seventh Amendment when it reduces a damages award as a matter of law instead of granting a new trial. *Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998) (per curiam) (holding that an order "enter[ing] judgment for a lesser amount than that determined by the jury without allowing [the plaintiff] the option of a new trial[] cannot be squared with the Seventh Amendment"); *see also Kennon*

*v. Gilmer*, 131 U.S. 22, 29 (1889) (holding that "no court of law . . . is authorized, according to its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury"). The most a defendant contesting the amount of compensatory damages can obtain is a new trial.

But Davis did not move for a new trial, and it is now too late for her to seek that relief in the district court. *See* Fed. R. Civ. P. 59(b) (requiring new-trial motions to be filed within 28 days of the district court's entry of judgment). And she cannot seek a new trial for the first time on appeal. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006) ("[A] party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court."); *Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 911 (6th Cir. 2000) (holding that failure to make a Rule 59 motion "precludes appellate review" of whether to grant a new trial). Defendant has therefore forfeited any challenge to the amount of damages.

In any event, a challenge to the size of the award in this case would fail. In suits under Section 1983, "[n]o formula exists to determine with precision compensatory damages," and "[t]he amount is left to the sound discretion of the fact finder." *Smith v. Heath*, 691 F.2d 220, 227 (6th Cir. 1982); *see also Vetters v. Berry*, 575 F.2d 90, 95-96 (6th Cir. 1978) (approving jury instructions stating that "[t]here is no fixed rule . . . by which damages may be mathematically computed or calculated" under Section 1983). The amount of damages therefore need not be established with the same "measure of proof"

as required for showing the existence of the injury. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931). Emotional-distress damages, in particular, can be awarded without exact proof of the amount. Restatement (Second) of Torts § 912 cmt. a (Am. L. Inst. 1965) (explaining that "complete certainty" as to "the extent of harm" is not required "in case of emotional disturbance"); *id.* cmt. b (explaining that, in cases of emotional distress, damages "can be awarded without proof of amount other than evidence of the nature of the harm.").

This Court's review of the size of a damages award is "extremely deferential," and the Court will not order a new trial "unless the award is contrary to all reason." *Advance Sign Grp.*, 722 F.3d at 787. Here, the jury's award of compensatory damages was relatively modest, far less than mental-distress awards that have previously been upheld. *See, e.g.*, *Lilley v. BTM Corp.*, 958 F.2d 746, 754 (6th Cir. 1992) (collecting cases and upholding, under state antidiscrimination law, a jury award of $350,000 for mental anguish). Davis's actions inflicted permanent emotional scars on Plaintiffs, and it was eminently reasonable for the jury to award them each $50,000 as compensation.

## II. Law-Of-The-Case Doctrine Bars Davis's Qualified-Immunity Argument.

Davis seeks to relitigate this Court's two prior decisions holding that she is not entitled to qualified immunity, but the Court has already definitively resolved that issue, affirming the district court's denial of qualified immunity at the summary-judgment stage. *Davis 2022*, 2022 WL 4546726, at *2-3. Nothing with respect to qualified

immunity has changed since that decision, and law-of-the-case doctrine bars reconsidering it now.

Perhaps recognizing that her qualified-immunity defense is foreclosed by the Court's prior decisions, Davis avoids using the words "qualified immunity" in her brief. Instead, she refers to whether *Obergefell* "created a clearly established constitutional right" (and whether *Obergefell* should be overturned). Davis Br. 42 (capitalization altered). But Davis's arguments about "clearly established law" can be understood only as addressing the test for qualified immunity, which asks whether a plaintiff has "show[n] that (1) the official violated his constitutional rights, and (2) at the time of the violation, it was '*clearly established*' that the officer's conduct would violate the Constitution." *Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024) (emphasis added). This Court has already held that the evidence shows Davis violated Plaintiffs' clearly established right to marry, *Davis 2022*, 2022 WL 4546726, at *2, and Davis provides no reason to reopen that question now.

### A. This Court's prior rejections of Davis's qualified-immunity defense are the law of this case.

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017); *see also Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) ("The law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case."). "The

purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe*, 801 F.3d at 739 (quoting *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012)). By declining to reconsider issues that were previously decided, courts "encourage efficient litigation and deter 'indefatigable diehards.'" *Id.* at 740 (quoting 18B Charles Alan Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 4478 (4th ed. 2015)).

Davis is just that sort of indefatigable diehard. This Court has already decided— twice—that Davis violated Plaintiffs' constitutional right to marry and that the right was clearly established at the time of her conduct. At the motion-to-dismiss stage, this Court held that Plaintiffs had "adequately alleged the violation of a constitution[al] right." *Davis 2019*, 936 F.3d at 435. The Court reached that conclusion based on four points: First, "the Fourteenth Amendment guarantees [Plaintiffs] the right, as same-sex couples, to marry." *Id.* Second, Plaintiffs "sought marriage licenses from Davis, whom Kentucky tasked with issuing those licenses." *Id.* Third, "under Kentucky law, they qualified for licenses." *Id.* And fourth, "Davis refused to license them." *Id.*

At the summary-judgment stage, this Court held that Plaintiffs had turned each of those allegations into proven facts. *Davis 2022*, 2022 WL 4546726, at *2. "As the district court recognized and as we have outlined above, those facts were proven in discovery, so plaintiffs have not only 'alleged' but also now 'shown' that Davis violated their constitutional right to marry." *Id.* During discovery, Davis "confirmed key facts." *Id.* at *1. In 2015, she was the clerk of Rowan County and was aware that the Supreme

Court was considering *Obergefell*. *Id.* Davis learned of the Supreme Court's decision in *Obergefell* holding that the fundamental right to marry cannot be denied to same-sex couples on the day it was released. *Id.* Both then-Governor Beshear and the Rowan County Attorney advised Davis that *Obergefell* legally obligated her to issue marriage licenses to same-sex couples. *Id.* Despite understanding her obligations under the Constitution, Davis directed her staff to stop issuing all marriage licenses. *Id.* at *2. "It was her decision to implement this policy in Rowan County, not anyone else's, and she implemented the policy in direct response to the *Obergefell* decision." *Id.* Davis denied a marriage license to Plaintiffs on three separate occasions, stating that "she could not issue them a license 'under God's authority.'" *Id.* These undisputed facts proved a constitutional violation. *Id.*

This Court also already determined in this litigation that *Obergefell* "clearly established" the right of same-sex couples to marry, including the right to obtain a marriage license. *Davis 2019*, 936 F.3d at 435. *Davis 2019* explains that the Supreme Court's decision in *Obergefell* "was as sweeping as it was unequivocal" and "both recognized the right to same-sex marriage and defined its contours." *Id.* at 436. The Supreme Court held that "same-sex couples may exercise the fundamental right to marry." *Id.* (quoting *Obergefell*, 576 U.S. at 675). The Supreme Court "made no mention of a limit on that right, of an exception to it, or of a multi-factor test for determining when an official violates it." *Id.* "For a *reasonable* official, *Obergefell* left no uncertainty." *Id.* At the summary-judgment stage, this Court reaffirmed that the "right was clearly

established in *Obergefell*." *Davis 2022*, 2022 WL 4546726, at *2. Those prior rulings are the law of this case and govern in this subsequent appeal. *See Jones*, 85 F.4th at 811 (applying law-of-the-case doctrine to conclude that right was "clearly established," despite subsequent panel's doubts about prior holding).

### B. No "exceptional circumstances" warrant departing from the Court's prior rulings in this case.

Law of the case is a "prudential" doctrine, *Howe*, 801 F.3d at 740, and the Court "may, in exceptional circumstances, deem it necessary to depart from a prior ruling," *Moody*, 871 F.3d at 426. But Davis has not even attempted to identify exceptional circumstances warranting a departure from the Court's prior rulings in this case, and no such circumstances exist. The Court has "recognized three exceptional circumstances under which [it] will consider a previously decided issue: '(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.'" *Id.*; *accord Ent. Prods., Inc. v. Shelby County*, 721 F.3d 729, 742 (6th Cir. 2013). None of those applies here. First, the district court granted summary judgment to Plaintiffs on liability before this Court's decision in *Davis 2022*, and the trial dealt exclusively with damages. There is thus no new evidence to consider regarding the violation of Plaintiffs' clearly established rights. Second, *Obergefell* remains as binding on this Court today as on the day it was decided,

so there is no change in controlling law. And third, Davis has identified no clear error or manifest injustice in the Court's prior decisions.

To the contrary, Davis's arguments for why she did not violate a clearly established right are all ones this Court has thoroughly considered and rejected in her prior appeals. Davis first contends that the district court erred by defining the clearly established constitutional right "too generally" as "simply the 'right to marry' under the Fourteenth Amendment." Davis Br. 42-43; *see also id.* at 46. In holding that Plaintiffs' right to marry was clearly established, however, this Court fully understood the need to avoid defining clearly established rights too generally. The Court noted that "the right's contours must have been so obvious that a reasonable official would have known that her conduct was out of bounds" and that "need for clarity means the Constitution's text, alone, is often insufficient to establish a right's edges." *Davis 2019*, 936 F.3d at 435-36. But *Obergefell* had "fill[ed] the void," "defined [the] contours" of the right, and "left no uncertainty." *Id.* at 436.

That conclusion was correct—and certainly not a manifest error. The clearly established right at issue here is not "nebulous." *Id.* The right to marry is unlike "the right to due process of law," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987), or "the right to speak in a public forum," *Occupy Nashville v. Haslam*, 769 F.3d 434, 444 (6th Cir. 2014), which are too general to give officials adequate notice. *Obergefell* clearly establishes that same-sex couples have the right to enter "civil marriage on the same terms and conditions as opposite-sex couples." 576 U.S. at 676. That is not an abstract concept.

Next, Davis rehashes her argument that even if Plaintiffs had a clearly established right to obtain a marriage license, they did not have a clearly established right to obtain the license *from her*. Davis Br. 44. In rejecting this argument before, the Court explained: "[T]hat's not how qualified immunity works, and that's not how constitutional rights work." *Davis 2019*, 936 F.3d at 436. "[N]owhere in the Constitution—or in constitutional law, for that matter—does it say that a government official may infringe constitutional rights so long as another official might not have." *Id.* Rather, "*[a]ll* government officials must respect *all* constitutional rights." *Id.*

Again, the Court got this right the first time. The Supreme Court commanded, in no uncertain terms, that "[n]o longer may this liberty be denied" to same-sex couples. *Obergefell*, 576 U.S. at 675. It did not say "no longer may this liberty be denied unless a government official feels strongly about denying it" or "no longer may this liberty be denied except by Kim Davis." *Obergefell* clearly established that the government—any government—cannot deny same-sex couples the right to marry. When Davis acted in her official role as Clerk of Rowan County to deny Plaintiffs a marriage license, she invoked "God's authority," but she was in fact exercising the authority of the Commonwealth of Kentucky. The Fourteenth Amendment therefore prohibited her, as a state actor, from depriving Plaintiffs of their right to marry. Plaintiffs are residents of Rowan County, and nothing supports Davis's contention that they were obligated to go somewhere else to find a government official who would honor their constitutional rights.

Davis also argues that even if *Obergefell* clearly established that the fundamental right to marry cannot be denied to same-sex couples, it failed to clearly establish how that right would "interact[]" with the religious rights of government employees.  Davis Br. 45-50.  But as this Court already held, Davis's desire for a religious accommodation is irrelevant to whether Plaintiffs' right to marry was clearly established.[1]  The qualified-immunity inquiry "does not ask whether Davis had a justification for taking the action (or, as here, inaction) that violated plaintiffs' constitutional rights."  *Davis 2022*, 2022 WL 4546726, at *3.  In recognizing that same-sex couples enjoy the right to marry, *Obergefell* "said nothing to suggest that government officials may flout the Constitution by enacting religious-based policies to accommodate their own religious beliefs."  *Davis 2019*, 936 F.3d at 437; *see also id.* at 442 (Bush, J., concurring in part and in the judgment) ("Davis knew or ought to have known, to a legal certainty, that she could not refuse to issue marriage licenses, as was her duty under state law, because of moral disapproval of homosexuality.").

Davis's reliance on *Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617 (2018), and *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), is misplaced.  Contrary to her suggestion, those cases did not involve government restrictions on the "rights of same-sex couples to marry."  Davis Br. 47.  Instead, those cases concerned whether

---

[1] To the extent that Davis raises her religious rights as an affirmative defense, rather than as a reason that the right of same-sex couples to marry was not clearly established, that too fails.  *See infra* Part III.

state antidiscrimination statutes requiring private individuals to provide certain services in connection with same-sex weddings violated those individuals' religious and speech rights. Here, however, Davis acted not as a private citizen but as a government official, exercising the full authority of the Rowan County Clerk's Office. Because those cases dealt with neither the constitutional right to marry nor the authority of government actors to restrict that right, they had no bearing on the scope of the right recognized in *Obergefell*.

Finally, Davis requests that *Obergefell* be overturned. As she concedes, "this Court does not have the authority to overrule Supreme Court precedent." *Id.* at 50 n.2; *see also Mallory*, 600 U.S. at 136 (instructing lower courts to "follow the case which directly controls" and "leav[e] to [the Supreme Court] the prerogative of overruling its own decisions"). And again, this Court has already held that Plaintiffs have proved Davis violated their constitutional rights. *Davis 2022*, 2022 WL 4546726, at *2. That is no longer up for debate.

### C. The Court's prior rulings establish Davis's liability under Section 1983.

Given her invocation of the "clearly established law" standard, Davis seems to be contesting only the denial of qualified immunity, rather than the grant of summary judgment to Plaintiffs with respect to liability. But in any event, the Court's prior decisions are conclusive not only with respect to qualified immunity, but also on the merits of Plaintiffs' claims under Section 1983. To overcome Davis's invocation of

qualified immunity, Plaintiffs were required to "show that [Davis] violated [their] constitutional rights." *Heeter*, 99 F.4th at 908. This Court held Plaintiffs did exactly that: "[P]laintiffs have not only 'alleged' but also now 'shown' that Davis violated their constitutional right to marry." *Davis 2022*, 2022 WL 4546726, at *2. In other words, Plaintiffs have proved that Davis, while acting under color of state law, deprived them of their constitutional rights. Section 1983 renders Davis liable for that violation. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable . . . .").

In these circumstances, the question of liability under Section 1983 is thus "coterminous with, or subsumed in" the first prong of the qualified-immunity analysis. *Brennan v. Township of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996); *cf. King v. City of Rockford*, 97 F.4th 379, 399 (6th Cir. 2024).

## III. Davis's Accommodation Claim Is Not Part Of This Case.

Davis's only remaining argument is that she "was entitled to a reasonable accommodation for her sincere religious convictions under the First Amendment and Kentucky's Religious Freedom Restoration Act, and the government's refusal to timely grant such an accommodation impermissibly infringed her religious exercise." Davis Br. 14; *see also id.* at 26-41. Davis previously attempted to shoehorn her claim for an accommodation into this Section 1983 suit by presenting it as part of her qualified-

immunity defense or as a separate affirmative defense. *See, e.g.*, Davis's Mot. for Summ. J., R. 93, Page ID ##1735-1749. But in her opening brief in this appeal, Davis makes no effort whatsoever to explain what her claim for an accommodation has to do with this case. It is not this Court's "function to craft an appellant's arguments." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1057 (6th Cir. 2015). A party therefore may not "leave it to the court to seek out the relevant law, identify the relevant evidence, and develop their argument for them." *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017). Because Davis does not say why her claim for a religious exemption gives her a defense against Plaintiffs' damages claim in this lawsuit, any such argument should be considered forfeited.

To the extent Davis seeks to litigate an accommodation claim in the context of this case, that claim should be summarily rejected. Davis contends that "the Commonwealth's failure to timely give [her] a reasonable accommodation for her sincerely held religious beliefs" violated the First Amendment. Davis Br. 26. But at the risk of stating the obvious, neither the Commonwealth of Kentucky nor former Kentucky Governor Steve Beshear is a party to this lawsuit, and Davis has not sought to bring them into this case. This Court therefore lacks jurisdiction over any claim that Davis might have against the Commonwealth or Governor Beshear for an accommodation. And in any event, such a claim would likely be moot, given that Davis left office more than five years ago. Indeed, although Davis filed a third-party complaint against Governor Beshear in the *Miller* litigation, *see* Verified Third-Party

Compl., R. 89-10, Page ID ##866-897, that case was dismissed as moot at Davis's own request.

Plaintiffs, meanwhile, are private citizens. They have no authority to grant Davis an accommodation. And Davis has no rights under the First Amendment—or under the Kentucky Religious Freedom Restoration Act—against private individuals. Davis's rights, like Plaintiffs' rights, run against the government, as she appears to acknowledge by directing her accommodation claim toward the Commonwealth. *See* U.S. Const. amend. I ("Congress shall make no law . . . prohibiting the free exercise of religion."); *see also Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2407 (2024) (explaining that the First Amendment achieves its goals "by preventing *the government* from" censoring speech, "not by licensing the government to stop *private actors* from speaking as they wish"); *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) ("[T]he Free Speech Clause prohibits only *governmental* abridgment of speech," not "*private* abridgment of speech."). To be sure, government employees have First Amendment rights of their own, but those too are rights against the government. *See Lindke v. Freed*, 601 U.S. 187, 196-97 (2024) (discussing the interplay between the state-action requirement and the rights of government employees). Davis therefore cannot bring her accommodation claim against Plaintiffs.

To the extent Davis means instead to assert an affirmative defense based on her free exercise rights under the First Amendment and the Kentucky Religious Freedom Restoration Act—without ever mentioning an affirmative defense in her brief—that

argument fails as well, for reasons this Court has previously explained. *Obergefell* "said nothing to suggest that government officials may flout the Constitution by enacting religious-based policies to accommodate their own religious beliefs." *Davis 2019*, 936 F.3d at 437. Defendant "provides no legal support for her contention that Kentucky's Religious Freedoms Restoration Act required her to do what she did," and her reading of the Act is one "no court has endorsed." *Id.* Given "the absence of any legal authority to support her novel" religion-based defense to Plaintiffs' Section 1983 claims, Defendant "should have known that *Obergefell* required her to issue marriage licenses to same-sex couples—even if she sought and eventually received an accommodation." *Id.*

Judge Bush reached a similar conclusion in his *Davis 2019* concurrence. As Judge Bush explained, "Davis not only argues that she was entitled to an accommodation but also takes the argument even further" by claiming "she was entitled to *self*-create an accommodation if none was forthcoming from the state government." *Id.* at 442 (Bush, J., concurring in part and in the judgment). In doing so, she "goes too far." *Id.* Even assuming Davis was entitled to a religious accommodation, "it was not permissible for [her] to take the law into her own hands." *Id.* Davis "knew or ought to have known, to a legal certainty, that she could not refuse to issue marriage licenses, as was her duty under state law, because of moral disapproval of homosexuality." *Id.* And if Davis "truly believed" she was entitled to an accommodation, "she should have sought and obtained judicial confirmation of her claim." *Id.*

Although the Court previously discussed these issues in the context of qualified immunity, the same reasoning forecloses Davis from asserting an affirmative defense to Plaintiffs' Section 1983 suit based on her free-exercise rights. As the district court put it when granting summary judgment to Plaintiffs, "Davis cannot use her own constitutional rights as a shield to violate the constitutional rights of others while performing her duties as an elected official." Mem. Op. and Order, R. 108, Page ID #1963. Although Davis's "conscientious religious objection to same-sex marriage outside of her official duties is not actionable," she "is liable for her actions within the scope of her work as county clerk"—those actions taken under color of state law. *Id.* at Page ID #1962. And Davis did not just seek a religious exemption for herself, but instead affirmatively created an official policy, which everyone in her office had to follow, of denying marriage licenses to same-sex couples. When Davis exercised her governmental authority to institute that policy, the public had constitutional rights against her, not the other way around. Indeed, the district court could "find no example, nor ha[d] Davis provided one, where a defendant's constitutional rights were found to be a valid defense for violating the constitutional rights of others." *Id.* at Page ID #1963. Davis has made no effort on appeal to provide such examples, and contrary examples abound.

The Supreme Court's recent decision in *Lindke* is instructive. In that case, the Supreme Court considered, in the context of a suit under Section 1983, the interplay between the First Amendment right of a private individual not to have his speech

censored by government officials on social media and the government official's own First Amendment right to speak on matters of public concern. *Lindke*, 601 U.S. at 196-97. Like the district court in this case, the Supreme Court held that the line between those rights depends on the state-action requirement. *Id.* Section 1983 provides a cause of action against individuals who violate rights "under color of" state law. 42 U.S.C. § 1983. "As its text makes clear, this provision protects against acts attributable to a State, not those of a private person." *Lindke*, 601 U.S. at 194. When a government official acts in his "private capacity," he may "exercise[] his own" constitutional rights. *Id.* at 197. But when the official takes actions that are "*fairly attributable to the State*," it is the public that has constitutional rights against the official, and the official's rights must yield. *Id.* at 198. A public official may therefore be liable for censoring speech on social media if the official "possessed actual authority to speak on the State's behalf" and "purported to exercise that authority." *Id.*; *see also NRA v. Vullo*, 602 U.S. 175, 198 (2024) (holding that public official was liable for coercing third parties to suppress speech, notwithstanding her own free speech rights); *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006) (explaining that a government employee has First Amendment rights when he "speaks as a citizen addressing a matter of public concern" but not when "the employee is simply performing his or her job duties").

*Obergefell* itself turns on the distinction between private rights and government action. The Court "emphasized" that "religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine

precepts, same-sex marriage should not be condoned." *Obergefell*, 576 U.S. at 679. As the Supreme Court explained, the First Amendment "ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered." *Id.* at 679-80. At the same time, however, the Fourteenth Amendment "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex," *id.* at 680, even if a state official asserts a religious justification for depriving the couple of that right.

In sum, government officials may be held liable for their conduct within the scope of their official duties when that conduct infringes the rights of private individuals. And that is true even though the official has the right, when acting as a private citizen, to speak out against the very action that she is required to take when acting in her role as a government official. To hold otherwise would turn the Bill of Rights on its head.

Here, there is no dispute that when Davis denied Plaintiffs the marriage license to which they were entitled under the Fourteenth Amendment, she acted on behalf of the State, pursuant to her official duties and in accordance with the official policy she had announced. As the district court explained, it is "clear that Davis was 'performing an actual or apparent duty of [her] office'—issuing marriage licenses—when she denied Plaintiffs their constitutional right to marriage." Mem. Op. and Order, R. 108, Page ID

#1962 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001)). Indeed, this Court has already held that Davis "acted on the State's behalf" when refusing to issue marriage licenses to same-sex couples and when requiring her subordinates to do the same. *Davis 2019*, 936 F.3d at 434. Under Section 1983, Davis is liable for her actions taken within the scope of her official duties, and her desire for an accommodation is no defense.

Finally, even if a free-exercise affirmative defense based on the First Amendment were available under Section 1983, it would not shield Davis's actions here for several reasons. First, the accommodation that she sought does not match the constitutional violation for which she is liable. Davis went beyond refusing to personally participate in issuing marriage licenses to same-sex couples and made it the official policy of her office that no one, including her subordinates, could grant licenses to same-sex couples as required by the Fourteenth Amendment. *See* Am. Compl., R. 27, Page ID #121; Answer, R. 96-1, Page ID #1865. Second, whereas state or federal laws that burden religious exercise are subject to constitutional scrutiny, the fundamental right to marry under the Fourteenth Amendment is a constitutional guarantee that cannot be trumped by a different constitutional right. Third, Davis's argument that she was entitled to an accommodation from "Governor Beshear's Mandate" is a red herring. *See* Davis Br. 26-27. Governor Beshear's letter to county clerks, issued the same day as the Supreme Court's *Obergefell* decision, conveyed what the Supreme Court had decided. *See* Letter from Gov. Beshear to Ky. Cnty. Clerks, R. 27-1, Page ID #128. But even if Beshear

46

had never sent that letter, *Obergefell* still would have required clerks to issue marriage licenses to same-sex couples as a matter of federal constitutional law, and Davis still would have violated Plaintiffs' Fourteenth Amendment rights. Fourth and finally, even if Kentucky's compliance with *Obergefell*'s commands were somehow subject to scrutiny under the Free Exercise Clause, the State's policies would pass muster. The obligation of all county clerks to license all marriages was "neutral and of general applicability." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (citing *Employment Div. v. Smith*, 494 U.S. 872 (1990)). And the State's compelling interest in complying with the Fourteenth Amendment would satisfy any level of scrutiny.[2]

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the district court's final judgment.

---

[2] Davis's argument based on the Kentucky Religious Freedom Restoration Act suffers from another flaw as well. Under the Supremacy Clause, that state statute cannot override the liability for a constitutional violation that Section 1983 imposes as a matter of federal law. *Cf. Felder v. Casey*, 487 U.S. 131 (1988) (holding that Section 1983 preempts an inconsistent state statute).

Dated:  September 20, 2024

Respectfully Submitted,

*/s/ William Powell*

Michael J. Gartland
DELCOTTO LAW GROUP PLLC
201 North Upper Street
Lexington, KY 40507
(859) 231-5800
mgartland@dlgfirm.com

Joseph D. Buckles
BUCKLES LAW OFFICE
149 N. Limestone
Lexington, KY 40507
(859) 225-9540
joe@joebuckles.com

William Powell
Kelsi Brown Corkran
*Counsel of Record*
Joseph Mead
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
(202) 661-6629
whp25@georgetown.edu

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing brief complies with the type-volume requirements of Federal Rule 32(a)(7) because it contains 12,330 words, excluding those portions of the brief exempted by Federal Rule 32(f) and Sixth Circuit Rule 32(b). I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in 14-point Garamond font, a proportionally spaced typeface, using Microsoft Word.

*/s/ William Powell*
William Powell

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September 2024, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ William Powell*
William Powell

# ADDENDUM

## Plaintiffs-Appellees' Designation of Relevant Court Documents

Pursuant to Sixth Circuit Rules 28(b) and 30(g), Plaintiffs-Appellees hereby designate the following relevant district court documents in the electronic record.

| Record Entry No. | Description of Document | Page ID # |
|:---:|:---:|:---:|
| Eastern District of Kentucky, No. 0:15-cv-00046 | | |
| 1 | Complaint | 1-6 |
| 19 | Order Dismissing Case | 95-97 |
| 27 | Amended Complaint | 119-126 |
| 27-1 | Letter from Governor Beshear to Kentucky County Clerks | 127-128 |
| 27-2 | Marriage License Issued to Plaintiffs | 129-130 |
| 27-3 | Certificate of Marriage | 131-132 |
| 29 | Motion to Dismiss | 139-140 |
| 49 | Memorandum Opinion and Order | 294-314 |

| | | |
|---|---|---|
| 88 | Plaintiffs' Motion for Summary Judgment | 713-714 |
| 88-2 | Excerpts from Transcript of Kim Davis Deposition | 724-743 |
| 89-10 | Verified Third-Party Complaint in *Miller v. Davis*, No. 0:15-cv-00044 (E.D. Ky.) | 866-897 |
| 93 | Davis's Motion for Summary Judgment | 1699-1776 |
| 96-1 | Answer | 1863-1870 |
| 108 | Memorandum Opinion and Order | 1948-1969 |
| 152 | Special Verdict Form | 2178 |
| 153 | Jury Instructions | 2179-2203 |
| 166 | Judgment | 2590 |
| 168 | Trial Transcript, Day One | 2639-2768 |
| 169 | Trial Transcript, Day Two | 2769-2937 |
| 170 | Trial Transcript, Day Three | 2938-3064 |

| 172 | Davis's Renewed Motion for Judgment as a Matter of Law | 3089-3106 |
|------|------|------|
| 175 | Memorandum Opinion and Order | 3125-3130 |
| 176 | Notice of Appeal | 3131-3132 |