**No. 24-5524**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DAVID ERMOLD; DAVID MOORE

Plaintiffs-Appellees

v.

KIM DAVIS, individually

Defendant-Appellant

On Appeal from the United States District Court for the Eastern District of
Kentucky, Case No. 15-cv-00046, Honorable David L. Bunning

### DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

A.C. Donahue
DONAHUE LAW GROUP, P.S.C.
P.O. Box 659
Somerset, KY 42502
(606) 677-2741
ACDonahue@donahuelaw-group.com

Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
dschmid@lc.org

*Attorneys for Defendant-Appellant Kim Davis*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1 and Rule 26.1 of this Court, Defendant-Appellant Kim Davis ("Davis") states that she is an individual person, is not a subsidiary or affiliate of a publicly owned corporation, and there is no publicly owned corporation, not a party to the appeal, that has a financial interest in its outcome.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... iii

STATEMENT CONCERNING EN BANC REVIEW ................................................1

INTRODUCTION .................................................................................................2

REASONS FOR GRANTING THE PETITION .......................................................4

I.    The En Banc Court Should Rehear Davis's Appeal To Decide The Question Of First Impression And Exceptional Importance Of Whether A Government Official—Sued In Her Individual Capacity And Stripped Of Government Immunity—Is Entitled To First Amendment Defenses In A Case Solely Alleging Speculative Emotional Distress. ............................................................................4

    A. The Panel's Decision Conflicts With Supreme Court And Authoritative Circuit Court Precedent On Whether Government Officials Sued In Their Individual Capacity And Otherwise Stripped Of Government Immunity Come To The Court As Individuals, Not State Actors ...................................4

    B. The Panel's Decision Conflicts With Supreme Court And Authoritative Circuit Court Precedent On Whether Individual Capacity Defendants Can Raise First Amendment Defenses To A Claim Solely Based On Alleged And Speculative Emotional Distress.....................................................................7

II.   The En Banc Court Should Rehear Davis's Appeal To Decide The Question Of First Impression And Exceptional Importance Of Whether The First Amendment Provides Immunity From Tort Liability Based Solely On Emotional Distress When The Defendant's Actions And Speech Clearly Addressed A Matter Of Public Concern And Was Not Directed Toward An Individual. ..........................9

    A. The Panel's Decision Conflicts With Supreme Court And Authoritative Circuit Court Precedent On Whether On Whether The First Amendment Provides A Defense To Tort Liability. .............................................................9

    B. The First Amendment Defense To Tort Liability For Emotional Distress Must Be Available To A Defendant Sued In Her Individual Capacity For Expression On A Matter Of Public Concern In The Same Manner As It Is Available To Any Other Person And The En Banc Court Should Apply The First Amendment's Tort Liability Shield To The Facts Of This Case.........14

CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ansell v. Ross Twp.*,
  2012 WL 1038825 (W.D. Penn. Mar. 28, 2012)....................................................9

*Boynton v. TRW, Inc.*,
  858 F.2d 1178 (6th Cir. 1988) ...............................................................................4

*Cantwell v. Connecticut*,
  310 U.S. 296 (1940)..............................................................................................13

*Connick v. Myers*,
  461 U.S. 138 (1983)..............................................................................................15

*Connor v. Reinhard*,
  847 F.2d 384 (7th Cir. 1988) .................................................................................8

*Davis v. Ermold*,
  141 S. Ct. 3 (2020) ................................................................................................2

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965)...............................................................................................4

*Ermold v. Davis*,
  936 F.3d 429 (6th Cir. 2019) .................................................................................5

*Gaddy v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*,
  551 F. Supp. 3d 1206 (D. Utah 2021) ..................................................................13

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006)..............................................................................................15

*Glass v First United Pentecostal Church*,
  676 So 2d 724 (La. App. 3d Cir. 1996)................................................................13

*Hafer v. Melo*,
  502 U.S. 21 (1991)...................................................................................... 2, 6, 7

*Hardin v. Straub*,
  954 F.2d 1193 (6th Cir. 1992) ...............................................................................8

*Holder v. Robbins*,
  2006 WL 751238 (E.D. Ky. Mar. 21, 2006) .........................................................9

*Hubbard v. J Message Group Corp.*,
  325 F. Supp. 3d 1198 (D.N.M. 2018) ..................................................................13

*Kentucky v. Graham*, 473 U.S. 159 (1985)..................................................... 2, 6, 8

*Laird v. Spencer*,
  No. 20-30237, 2025 WL 79826 (5th Cir. Jan. 13, 2025) ...................................2, 8

*Lindke v. Freed*,
601 U.S. 187 (2024)..........................................................................................15

*Naoko Ohno v. Yuko Yasuma*,
723 F.3d 84 (9th Cir. 2013)...............................................................................12

*New York Times v. Sullivan*,
376 U.S. 254 (1964)............................................................................................7

*Olson v. First Church of Nazarene*,
661 N.W.2d 254 (Minn. Ct. App. 2003) ...........................................................14

*Paul v. Watchtower Bible & Tract Soc'y*,
819 F.2d 875 (9th Cir. 1987) .................................................................. 1, 10, 12

*Pleasant Glade Assembly of God v. Schubert*,
264 SW3d 1 (Tex. 2008).....................................................................................13

*Sands v. Living Word Fellowship*,
34 P.3d 955 (Alaska 2001) .................................................................................12

*Schneiderman v. United States*,
320 U.S. 118 (1943)..............................................................................................3

*Snyder v. Evangelical Orthodox Church*,
216 Cal. App. 3d 297 (1989)..............................................................................13

*Snyder v. Phelps*,
562 U.S. 443 (2011)............................................................................... 1, 7, 10

*Thomas v. Review Bd. of Indiana Emp. Sec. Div.*,
450 U.S. 707 (1981)..............................................................................................3

*United States v. Ballard*,
322 U.S. 78 (1944)..............................................................................10, 11, 14

*United States v. Lanier*,
120 F.3d 640 (6th Cir. 1997)................................................................................4

*Will v. Michigan Dep't of State Police*,
491 U.S. 58 (1989)................................................................................................6

*Yeldell v. Cooper Green Hosp., Inc.*,
956 F.2d 1056 (11th Cir. 1992) ...........................................................................8

**Rules**

6th Cir. I.O.P 40 ...................................................................................................1
Fed. R. App. P. 40.................................................................................................1

## STATEMENT CONCERNING EN BANC REVIEW

As the Panel acknowledged, Davis's contention "that the Free Exercise Clause provides her an affirmative defense to liability" is "an issue of first impression." (Doc. 32-2, Opinion, 9.) Under Fed. R. App. P. 40(b)(2) and 6th Cir. I.O.P 40(e), Davis hereby provides the following statement:

(1)    This proceeding involves questions of exceptional importance and of first impression in this Court, namely: whether the First Amendment shields Davis—sued in her *individual capacity* and stripped of any governmental immunity—from tort liability solely based on allegations of speculative emotional distress in the same manner the Free Speech Clause provides First Amendment immunity under *Snyder v. Phelps*, 562 U.S. 443 (2011).

(2)    The Panel's decision conflicts with a decision from the United States Supreme Court in *Snyder v. Phelps*, 562 U.S. 443 (2011), an authoritative decision from the United States Court of Appeals for the Ninth Circuit in *Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875 (9th Cir. 1987), and the decisions of numerous other courts, concerning the question of exceptional importance as to whether the First Amendment—in whole—provides a defense to tort liability for government officials sued in their individual capacity and stripped of all government immunity, and the full Court's consideration is therefore necessary to secure and maintain uniformity of the Court's decisions.

(3)    The Panel's decision conflicts with decisions from the United States Supreme Court in *Hafer v. Melo*, 502 U.S. 21 (1991) and *Kentucky v. Graham*, 473 U.S. 159 (1985), and an authoritative decision from the United States Court of Appeals for the Fifth Circuit in *Laird v. Spencer*, No. 20-30237, 2025 WL 79826 (5th Cir. Jan. 13, 2025), concerning the question of exceptional importance of whether a government official sued in her individual capacity and stripped of all government immunity may assert personal defenses to liability, such as the First Amendment, and the full Court's consideration is therefore necessary to secure and maintain uniformity of the Court's decisions.

## INTRODUCTION

"In *Obergefell v. Hodges*, the Court read a right to same-sex marriage into the Fourteenth Amendment, even though that right is found nowhere in the text." *Davis v. Ermold*, 141 S. Ct. 3, 3 (2020) (Thomas, J., Statement). As was predicted at the time *Obergefell* was decided, it "would threaten the religious liberty of many Americans who believe that marriage is a sacred institution between one man and one woman." *Id.* "As a result of this Court's alteration of the Constitution, Davis found herself with a choice between her religious beliefs and her job. When she chose to follow her faith . . . she was sued almost immediately for violating the constitutional rights of same-sex couples." *Id. And, after being sued, she was thrown in jail for doing so and then found liable for hundreds of thousands of dollars*.

In a country begat by those "who sought refuge in a new world from the cruelty and oppression of the old, where men have been burned at the stake, imprisoned, and driven into exile in countless numbers for their political and religious beliefs," *Schneiderman v. United States*, 320 U.S. 118, 120 (1943), we can do better, and the Constitution demands we do so. Davis was "put to a choice between fidelity to religious belief or cessation of work" (and ultimately jail and hundreds of thousands of dollars in damages). *Thomas v. Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981). The First Amendment precludes that Hobson's choice, yet the Panel declined to extend its protection to Davis. If ever there were a case of exceptional importance, the first individual in the Republic's history who was thrown in jail for following her religious convictions should be it.

Nevertheless, the Panel held that the First Amendment provides no shield for Davis as an individual because she is allegedly a state actor—even to this day. As the Panel saw the matter, "Davis cannot raise the First Amendment as a defense because she is being held liable for state action, which the First Amendment does not protect." (Dkt. 32-2, Opinion, 9.) While that *was* true at the beginning when she was sued in her official capacity, that does not hold true *now* when *Davis stands before the Court solely as an individual—stripped of any government immunity*.

Nevertheless, as the Panel acknowledged, Davis's contention "that the Free Exercise Clause provides her an affirmative defense to liability" is "an issue of first

impression." (Doc. 32-2, Opinion, 9.) Because the questions presented in this Petition involve an issue of first impression in this Circuit, and because First Amendment rights are "of transcendent value to all of society, and not merely to those exercising their rights," *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965), the full Court should review the questions. *E.g.*, *Boynton v. TRW, Inc.*, 858 F.2d 1178, 1180 (6th Cir. 1988) ("grant[ing] TRW's petition for rehearing *en banc* because the case involved an issue of exceptional importance and first impression."). Indeed, "it is hard to believe that such a case of first impression does not present exceptional circumstances" warranting en banc review. *United States v. Lanier*, 120 F.3d 640, 645 (6th Cir. 1997) (Merritt, J., dissenting). The Court should grant the Petition.

## REASONS FOR GRANTING THE PETITION

**I. The En Banc Court Should Rehear Davis's Appeal To Decide The Question Of First Impression And Exceptional Importance Of Whether A Government Official—Sued In Her Individual Capacity And Stripped Of Government Immunity—Is Entitled To First Amendment Defenses In A Case Solely Alleging Speculative Emotional Distress.**

**A. The Panel's Decision Conflicts With Supreme Court And Authoritative Circuit Court Precedent On Whether Government Officials Sued In Their Individual Capacity And Otherwise Stripped Of Government Immunity Come To The Court As Individuals, Not State Actors.**

The Panel held that Davis "is being held liable for state action" (Dkt. 32-2. Opinion, 9) because "[a] §1983 individual-capacity claim seeks to impose personal liability on a government official for actions she takes under color of state law."

(Opinion, 12.) It concluded that "[s]uch state actions are not protected by the First Amendment, *regardless of the capacity in which the defendant is sued*." (*Id.* (emphasis added).) Simply put, the Panel held that Davis, despite standing before the Court as an individual, "by definition, cannot be protected by the First Amendment." (Opinion, 10.) That decision conflicts with the Supreme Court's precedents, and the prior decisions of this Court.

First, as this Court has previously recognized in this case, "the law treats Davis *not as one person, but as two*: an official *and an individual*." *Ermold v. Davis*, 936 F.3d 429, 432 (6th Cir. 2019) (emphasis added). *See also id.* at 432 ("plaintiff pleaded a plausible case that Davis, *as an individual*, violated their right[s]" (emphasis added)). More to the point, even the caption from the Panel's own Opinion—in this appeal—recognizes how Davis stands before the Court:

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0049p.06

## UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

DAVID ERMOLD; DAVID MOORE,
        *Plaintiffs-Appellees,*

        v.

KIM DAVIS, individually,
        *Defendant-Appellant.*

No. 24-5524

Conspicuously absent is any reference to official capacity claims remaining against Davis in this appeal. The reason is simple: there aren't any. Davis, when she

appeared before the Panel, did so **only individually**—not as a state actor and not as a government official with some form of sovereign or qualified immunity—but solely as Davis the *person*.

In addition to conflicting with this Court's prior determinations of precisely how Davis stands before the Court, the Panel's decision conflicts with United States Supreme Court precedent in *Hafer v. Melo,* 502 U.S. 21, 25 (1991) and *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In *Hafer*, the Court made clear that "the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." 502 U.S. at 27 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Panel found this distinction to require a "binary outcome" (dkt. 32-2, Opinion, 10), but ignored the critical distinction between the two capacities. As the Supreme Court has held, "officers sued in their personal capacity comes to the Court *as individuals*." 502 U.S. at 27 (emphasis added).

Indeed, "[p]ersonal-capacity suits seek to impose *personal liability* upon a government official." *Kentucky*, 473 U.S. at 165 (emphasis added). By contrast, an "official-capacity suit, is, in all respects other than name, to be treated as a suit against the entity. . . . It is *not* a suit against the official personally." *Id.* (emphasis original). "[A]n award of damages against an official in his personal capacity can be executed *only* against the official's *personal* assets." *Id.* at 66 (emphasis added). Thus, in all respects, an individual stripped of all government immunity and standing

before the Court solely as an individual stands to lose *personally* with no shield of government immunity. An individual-capacity defendant cannot stand before the Court as an individual, on the hook for tort liability as a person, yet have no personal defenses available to her.

**B.    The Panel's Decision Conflicts With Supreme Court And Authoritative Circuit Court Precedent On Whether Individual Capacity Defendants Can Raise First Amendment Defenses To A Claim Solely Based On Alleged And Speculative Emotional Distress.**

The Panel's decision conflicts with Supreme Court and authoritative circuit court precedent on whether individual-capacity defendants can assert personal affirmative defenses, such as the First Amendment. As a starting point, there is no question that the First Amendment provides an affirmative defense to liability for individuals. *Snyder v. Phelps*, 562 U.S. 443 (2011); *New York Times v. Sullivan*, 376 U.S. 254 (1964). The Panel agreed. (Dkt. 32-2, Opinion, 9.) But the Panel's decision that such defenses were not available to an individual-capacity defendant conflicts with the Supreme Court's precedent and the authoritative decisions of the other circuits.

In *Hafer*, the Supreme Court noted because those government officials are stripped of their governmental nature in an individual-capacity claim, they may assert personal defenses. 502 U.S. at 25 ("officials sued in their personal capacities, unlike those sued in their official capacities, may assert *personal immunity defenses*"

7

(emphasis added)). In *Kentucky v. Graham*, the Court noted that "[w]hen it comes to defenses to liability, an official in a personal-capacity action" are able to "assert *personal immunity defenses*." 473 U.S. at 166 (emphasis added); *id.* at 167 ("A victory in a personal-capacity action is a victory against the individual defendant."). *See also Hardin v. Straub*, 954 F.2d 1193, 1198-99 (6th Cir. 1992) (same).

Moreover, the Panel's decision conflicts with precedent from the United States Court of Appeals for the Fifth Circuit in *Laird v. Spencer*, 2025 WL 79826, *2 (5th Cir. Jan. 13, 2025). There, the Fifth Circuit noted that "the Supreme Court observed a distinction between personal-capacity suits—in which defendants may assert personal immunity defenses—and official-capacity suits—in which personal defenses are unavailable." *Id.*

The Panel unnecessarily limited the reach of *Hafer* to suggest it was inapplicable to Davis because she was sued for actions as a government official. The Panel held that Davis is shielded by *no defenses* because her actions "are not protected by the First Amendment, *regardless of the capacity in which the defendant is sued*." (Dkt. 32-2, Opinion, 12 (emphasis added).) This is incorrect. *Hardin*, 954 F.2d at 1199 ("officials sued in their personal capacities . . . may assert personal immunity defenses"); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (personal-capacity defendants may assert *personal defenses*); *Connor v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988) ("different defenses are available to a

8

defendant who is sued in his personal capacity."). *See also Holder v. Robbins*, 2006 WL 751238, *1 (E.D. Ky. Mar. 21, 2006) ("Personal *defenses* are available to the defendant in an individual capacity suit." (emphasis added)). *Ansell v. Ross Twp.*, 2012 WL 1038825, *17 (W.D. Penn. Mar. 28, 2012) ("A personal-capacity defendant may rely on personal defenses *or* immunities." (emphasis added)).

*          *          *

These Panel's decision involves—as the Panel recognized (dkt. 32-2, Opinion, 9)—questions of first impression and one in which there is a conflict with Supreme Court precedent. The En Banc Court should rehear the case, resolve the conflicts, answer the question of first impression, and hold that because individual capacity government defendants come to the Court as *individuals* stripped of their sovereign or qualified immunity, they may assert personal liability defenses in their individual capacity.

**II.    The En Banc Court Should Rehear Davis's Appeal To Decide The Question Of First Impression And Exceptional Importance Of Whether The First Amendment Provides Immunity From Tort Liability Based Solely On Emotional Distress When The Defendant's Actions And Speech Clearly Addressed A Matter Of Public Concern And Was Not Directed Toward An Individual.**

**A.    The Panel's Decision Conflicts With Supreme Court And Authoritative Circuit Court Precedent On Whether On Whether The First Amendment Provides A Defense To Tort Liability.**

As the Panel recognized, the use of the First Amendment Free Exercise Clause as an affirmative defense to tort liability is a question of first impression. (Dkt. 32-

2, Opinion, 9.) Nevertheless, the Supreme Court has plainly held that the First Amendment is a defense to tort liability. *See Snyder v. Phelps*, 562 U.S. 443 (2011). It held that the First Amendment "can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress." *Id.* at 451. And this is particularly true where the speech or religious expression at issue involves a matter of public concern, *id.* at 452-53, such as the Nation's stance on same-sex marriage and the political and moral conduct of the United States. *Compare id.*, *with* (dkt. 32-2, Opinion, 2-3.)

The Panel's decision that Davis did not have a free exercise defense to tort liability for claims against her in her individual capacity conflicts with precedent from the United States Supreme Court and the Ninth Circuit Court of Appeals. *See, e.g.*, *United States v. Ballard*, 322 U.S. 78, 86-87 (1944); *Paul v. Watchtower Bible & Tract Society*, 819 F.2d 875 (9th 1987).

In *Ballard*, the Supreme Court recognized:

Heresy trials are foreign to our Constitution. Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others. Yet the fact that they may be beyond the ken of mortals does not mean that they can be made suspect before the law. Many take their gospel from the New Testament. But it would hardly be supposed that they could be tried before a jury charged with the duty of determining whether those teachings contained false representations. The miracles of the New Testament, the Divinity of Christ, life after death, the power of prayer are deep in the religious convictions of many. *If one could be sent to jail because a jury in a hostile environment found those teachings false, little indeed would be*

*left of religious freedom. The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views.* Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views. The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. *When the triers of fact undertake that task, they enter a forbidden domain*.

322 U.S. at 86-87. The Panel's holding directly conflicts with this precedent. In fact, it said that accepting Davis's free exercise defense "would subvert the Bill of Rights," and "dire possibilities might follow if Davis's arguments were accepted." (Dkt. 32-2, Opinion, 13.) But the Supreme Court has found that subjecting people to trial, jail, and other penalties were—in fact—the dire possibilities if the Free Exercise Clause is not a defense to liability. 322 U.S. at 86-87. The decisions cannot be reconciled.

Additionally, the Ninth Circuit in *Paul* held that the First Amendment Free Exercise Clause provides a defense to tort liability. It held:

State laws whether statutory or common law, including tort rules, constitute state action. In *New York Times Co. v. Sullivan*, 376 U.S. 254, (1964), the Supreme Court ruled that state libel laws are subject to the constraints of the first amendment. "The test," according to the Court, "is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised." 376 U.S. at 265. . . . For purposes of this test, we see no difference between libel and other forms of torts. *Clearly, the application of tort law to activities*

11

*of a church or its adherents in their furtherance of their religious belief is an exercise of state power. When the imposition of liability would result in the abridgement of the right to free exercise of religious beliefs, recovery in tort is barred.*

819 F.2d at 880 (emphasis added). *See also id.* ("The Jehovah's Witnesses argue that their right to exercise their religion freely entitles them to engage in the practice of shunning. The Church further claims that assessing damages against them for engaging in that practice would directly burden that right. . . . *We agree that the imposition of tort damages on the Jehovah's Witnesses for engaging in the religious practice of shunning would constitute a direct burden on religion*." (emphasis added)).

The Ninth Circuit's decision in *Paul* "applied an analysis similar to *New York Times*." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013). And, "the application of domestic tort law to activities of a church or its adherents in furtherance of their religious beliefs is an exercise of state's power," *id.*, and thus warrants a defense under the First Amendment. *Id.* The Ninth Circuit's decision in *Paul*, that First Amendment affirmative defenses are available against tort liability, conflicts with the Panel's decision that *New York Times* has no application to Davis. (Dkt. 32-2, Opinion, 11.) Those decisions cannot be reconciled.

Other courts have held that the First Amendment Free Exercise Clause provides a defense to tort liability. *E.g.*, *Sands v. Living Word Fellowship*, 34 P.3d 955, 959 (Alaska 2001) (holding that liability for emotional distress and negligence

claims are "barred" by the Free Exercise Clause of the First Amendment to the U.S. Constitution"); *Snyder v. Evangelical Orthodox Church*, 216 Cal. App. 3d 297, 305 (Cal. Ct. App. 6th 1989) (holding that "where the imposition of [tort] liability would result in abridging the free exercise of those beliefs, *it is barred*" (emphasis added)); *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 10 (Tex. 2008) (holding that the Free Exercise Clause provides an affirmative defense to a tort suit alleging "intangible, psychological injury" and "emotional distress"); *Hubbard v. J Message Group Corp.*, 325 F. Supp. 3d 1198, 1212-13 (D.N.M. 2018) (holding that "recovery in tort is barred" when it would infringe the Free Exercise Clause"); *Gaddy v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*, 551 F. Supp. 3d 1206, 1222 (D. Utah 2021) ("the First Amendment applies as a defense" when the alleged tort arises from a defendant's religious exercise); *Glass v First United Pentecostal Church*, 676 So.2d 724, 738 (La. App. 3d Cir. 1996) ("courts have extended free exercise protection to bar recovery for intentionally tortious activity"); *id.* at 737 ("Offense to someone's sensibilities resulting from religious conduct is simply not actionable in tort." (citing *Cantwell v. Connecticut*, 310 U.S. 296 (1940)); *Murphy v I.S.K.Con. of New England, Inc.,* 571 N.E.2d 340, 350 (Mass. 1991) ("[T]he First Amendment free exercise clause provide[s] a complete defense to claims of outrageous conduct, defamation, invasion of privacy, and fraud."); *id.* ("free exercise concerns barred recover despite the real and substantial harms

suffered by the plaintiff"); *Olson v. First Church of Nazarene*, 661 N.W.2d 254, 266 (Minn. Ct. App. 2003) ("[W]e hold that the First Amendment precludes exercise of jurisdiction over [tort] claim[s].").

As each of these decisions makes clear, the First Amendment *as a whole* provides an affirmative defense to tort liability, including the Free Exercise Clause. The reason is simple: "If one could be sent to jail because a jury in a hostile environment found those teachings false, little indeed would be left of religious freedom." *Ballard*, 322 U.S. at 87. Yet, that is what happened here. Davis was jailed, haled before a jury, and now faces crippling monetary damages. (Dkt. 32-2, Opinion, 3-5.) "[T]he First Amendment precludes such a course." *Ballard*, 322 U.S. at 85.

The Panel's decision conflicts with each of these decisions. And the En Banc Court should rehear Davis's appeal to answer the question of first impression and exceptional importance, and hold that Davis—as an individual standing before the Court in her personal capacity—is entitled to an affirmative defense under the Free Exercise Clause of the First Amendment.

**B.    The First Amendment Defense To Tort Liability For Emotional Distress Must Be Available To A Defendant Sued In Her Individual Capacity For Expression On A Matter Of Public Concern In The Same Manner As It Is Available To Any Other Person And The En Banc Court Should Apply The First Amendment's Tort Liability Shield To The Facts Of This Case.**

The conclusion that all clauses—including the Free Exercise Clause—of the First Amendment should provide an affirmative defense to individual capacity

government defendants stripped of their governmental immunity is necessary to ensure First Amendment protection is afforded to all citizens. Indeed, *Snyder* did not limit its decision to merely speech but said the First Amendment bars recovery. 562 U.S. at 460 ("we find that *the First Amendment* bars Snyder from recovery for intentional infliction of emotional distress or intrusion upon seclusion" (emphasis added)).

After all, Davis "did not relinquish [her] First Amendment rights when [s]he became [clerk]," *Lindke v. Freed*, 601 U.S. 187, 196 (2024), and remained "[a] private citizen with [her] own constitutional rights." *Id.* Indeed, as the Supreme Court recognized in *Garcetti v. Ceballos*, "a citizen who works for the government *is nonetheless a citizen*." 547 U.S. 410, 419 (2006) (emphasis added). More specifically, the Supreme Court stated in *Connick v. Myers* that "[o]ur responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." 461 U.S. 138, 147 (1983). A decision—like that of the Panel here—depriving Davis, and other government defendants stripped of their government immunity and standing before the Court solely as individuals, would mean government officials shed their constitutional rights upon election, appointment, or other entrance of government service. *That cannot be right.*

## CONCLUSION

Because the Panel's decision involves a question of first impression on a matter of exceptional constitutional importance, and answered that question in a way that conflicts with the Supreme Court's precedents and authoritative precedents of the other Circuits, the En Banc Court should rehear Davis's appeal, resolve the conflicts, and ensure that the First Amendment's protections are not surrendered by government defendants standing before the Court in their individual, personal capacity. The Petition should be granted.

Respectfully submitted,

/s/ Daniel J. Schmid

A.C. Donahue
DONAHUE LAW GROUP, P.S.C.
P.O. Box 659
Somerset, KY 42502
(606) 677-2741
ACDonahue@donahuelaw-group.com

Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
dschmid@lc.org

*Attorneys for Defendant-Appellant Kim Davis*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(b)(1) because it contains 3,892 words, as determined by the word-count function of Microsoft Word 2013, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 6th Cir. R. 32(b)(1).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font

|  |  |
|---|---|
|  | /s/ Daniel J. Schmid |
| A.C. Donahue | Mathew D. Staver, *Counsel of Record* |
| DONAHUE LAW GROUP, P.S.C. | Horatio G. Mihet |
| P.O. Box 659 | Daniel J. Schmid |
| Somerset, KY 42502 | LIBERTY COUNSEL |
| (606) 677-2741 | P.O. Box 540774 |
| ACDonahue@donahuelaw-group.com | Orlando, FL 32854 |
|  | (407) 875-1776 |
|  | court@lc.org |
|  | hmihet@lc.org |
|  | dschmid@lc.org |